122  341
73a 455

122  341
148  573

122  341
90a 657

## JARBOE v. HEY *et al.*

### Division One, May 28, 1894.

1. **Widow:** DOWER. A widow is entitled to dower in land in which her husband was seized of an equitable estate of inheritance.

2. **Will:** CANON OF CONSTRUCTION. It is a paramount rule in the construction of wills that due regard be given to the directions of the will, and to the true intent of the testator.

3. ———: TRUST: INCOME, ALIENATION OF. A testator may, by placing his estate in the hands of trustees, protect its income from the creditors and purchasers of the beneficiaries of the trust, though the beneficial use and enjoyment of the income for life was expressly granted. (*Lampert v. Haydel,* 96 Mo. 441.)

4. ———: "HEIRS." The word "heirs" will be considered as a word of limitation, and not of purchase, unless the will clearly shows that it was used to designate a new class of beneficiaries.

5. ———: DEVISE: CONDITION PRECEDENT. A devise of an estate to a trustee who is invested with discretionary power to convey it to another when in the trustee's opinion the proposed beneficiary shall become competent to manage it is a devise on condition precedent.

6. ———: TRUST ESTATE: DOWER. A testator devised to a trustee property in trust for the testator's son, who was a spendthrift, directing him to convey the same to the son whenever, in the trustee's opinion, the son should become competent to manage it; and it was further provided that in case the son should die before it was conveyed to him, it should be conveyed to his heirs. The son died before any conveyance to him, leaving a widow and one child. *Held,* that no estate vested in the son by the will, and that his widow was not entitled to dower therein.

7. ———: ———: ———: HEIR. The widow was not an heir of the son, either at common law or by statute, he having left a child surviving him.

*Appeal from Jackson Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*F. W. Griffin* and *C. H. Nearing* for appellant.

(1) The money in the hands of the trustee must be regarded, in equity, as real estate and the administrator of Charles A. Jarboe, has no title thereto. Note to *Fletcher v. Ashburner*, 1 White & Tudor's Eq. Cas. 534; 4 Kent's Com. 50; 1 Scribner on Dower [2 Ed.], 457. (2) Charles A. Jarboe took an equitable fee simple in the lands devised in trust. *Preston v. Brant*, 96 Mo. 556; *Chew v. Keller*, 100 Mo. 362; *Finlay v. King's Lessee*, 3 Pet. 346; *Johnson v. Jacob*, 11 Bush (Ky.), 646; *Jacob v. Jacob*, 4 Bush (Ky.), 110; *Collier's Will*, 40 Mo. 287. (3) Whatever equitable estate and interest passed to Charles A. Jarboe under the will his widow is entitled to dower by implication. *Johnson v. Jacob, supra; Jacob v. Jacob, supra.*

*Brumback & Brumback* for respondents.

(1) We agree with the appellants that, although part of the trust estate is now real property and part cash and notes derived from the sale of real estate by the trustee under the power of sale given him by the will, still the whole goes as real estate because: *First.* It was originally real estate. *Second.* There was no equitable conversion of the real estate into personalty, the power given to the trustee to sell being optional, and not imperative, and a power of re-investment in real estate being given, the property for the purpose of distribution retains the characteristics of real estate. *Third.* When the trust fund, composed of both real and personal estate, is directed to be conveyed to the heirs of a certain person, the whole assets of the trust go as one fund and are distributed as if the whole were real property. *Fabens v. Fabens*, 141 Mass. 395; *Merrill v. Preston*, 135 Mass. 451; 2 Jarman on Wills

[Randolph & Talcott's Ed.], p. 610, note 14; *Collier's Will*, 40 Mo. 323. (2) The widow of Charles A. Jarboe had no dower in the property, unless her husband was seized of an estate of inheritance therein, or unless John F. Jarboe was seized of such an estate to the use of Charles A. 1 R. S. 1879, sec 2186; 1 R. S. 1889, sec. 4513; *Young v. Thrasher*, 115 Mo. 229; *Davis v. Evans*, 102 Mo. 164; *Davis v. Green*, 102 Mo. 170. (3) The trustee, under the will of D. M. Jarboe, was seized of the whole estate, not for the use of Charles, but to protect the same against any use thereof by Charles, except in the event of the happening of a contingency that never occurred. Charles never having reformed, the trustee during the whole time was seized of the property in opposition to Charles and for the benefit of his heirs. Charles having no use in the property, his widow could have no dower therein. *Warren v. Williams*, 25 Mo. App. 23; 1 Washburn on Real Property [5 Ed.], p. 204; *King v. Finlay*, 3 Peters, 346; *West v. Moore*, 37 Miss. 114; *Den v. Messenger*, 33 N. J. L. 499; 2 Jarman on Wills [Randolph & Talcott's Ed.], p. 513, note 5; *Cassem v. Kennedy*, 35 N. E. Rep. 738; *Lampert v. Haydel*, 96 Mo. 439; *Partridge v. Cavender*, 96 Mo. 452; *Kenyon v. Kenyon*, 24 Atl. Rep. 787; *Howland v. Clendennin*, 31 N. E. Rep. 977; 1 Perry on Trusts, sec. 386*a*; *Re Dull's Estate*, 137 Pa. St. 112; 2 Perry on Trusts, sec. 508; 1 Perry on Trusts, sec. 254. (4) The heirs of Charles took as purchasers under the will. They took, not through Charles, for he had no estate in the property that he could have conveyed or devised to others, thus cutting out his "heirs." The heirs mentioned in the will acquired title as purchasers under the will directly from David M. Jarboe. They took because they were the persons designated to take upon the happening of a certain event, namely the death of Charles. 2 R. S.

1889, secs. 8838, 8911; *Tesson v. Newman*, 62 Mo. 198; *Emmerson v. Hughes*, 110 Mo. 627; Tiedeman on Real Property, secs. 505, 495; *Rife v. Geyer*, 59 Pa. St. 393. (5) The widow of Charles is not an heir within the meaning of that term as used in the will, but Agnes Jarboe is such heir and the whole property should go to her. Beach on Wills, sec. 294; Am. and Eng. Encyclopedia of Law, title, Heir; Bouvier's Law Dictionary, title, Heir; R. S. 1889, secs. 4465, 4513; 2 Scribner on Dower, p. 40, sec. 33; Rawle on Covenants for Title, secs. 5977; *Mason v. Bailey*, 14 Atl. Rep. 309; *Dodge's Appeal*, 106 Pa. St. 216; *Irvin's Appeal*, 106 Pa. St. 176; *Eby's Appeal*, 84 Pa. St. 241; *Tillman v. Davis*, 95 N. Y. 17; *Platt v. Mickle*, 137 N. Y. 106; *Fabens v. Fabens*, 141 Mass. 395; *Merrill v. Preston*, 135 Mass. 451.

MACFARLANE, J.—The purpose of this suit is to obtain the proper construction of the will of David M. Jarboe as it affected the disposition of certain real estate devised to plaintiff John F. Jarboe, as trustee, and of the proceeds of some of the land which had been sold by the trustee under power contained in the will. On the twenty-first day of February, 1884, the said David M. Jarboe made his will, by which, after some special bequests to his wife, he gave to her and his son John F. each, one undivided one-third of all his real estate. The remaining provisions of the will are as follows:

"*Fourth.* I further give, devise and bequeath to my said son, John F. Jarboe, the remaining one undivided third of all my real estate in trust, and direct that out of the profits of said undivided one-third of all my real estate, he shall purchase for Charles A. Jarboe, my youngest son,, two suits of suitable clothing a year and either pay to the said Charles A. Jarboe $25 a month

in money, or use that amount per month in paying his board, as my said son John F. shall elect.

"*Fifth.* I direct that my said son John F. Jarboe shall have full power and authority to sell and convey any or all of the undivided one-third of my real estate named in paragraph four (4), at such time and for such sums as he shall deem best and to reinvest the amount or amounts so received in such manner as to him shall seem best.

"*Sixth.* I further direct that, whenever, in the opinion of my said son, John F., or his successors in this trust, my said son Charles A. has reformed and is capable of taking care of and using the same for proper purposes, he shall give to him, the said Charles A. Jarboe, $1,000, if there be so much in his hands arising either from the sale or growing out of the rents and profits of said undivided one-third of my real estate named in paragraph four (4).

"*Seventh.* I further direct that, at any time within one year after my said son Charles A. shall have received the $1,000 as provided for in the last preceding paragraph, he, the said Charles A., shall by his attention to business or general conduct and behavior convince my said son John F. Jarboe or his successor that he will not squander or waste the same, then he, the said John F. Jarboe, or his said successor shall convey to him, the said Charles A. Jarboe, all the undivided one-third of my real estate, named in paragraph four (4) remaining at such time unsold, also to convey to him any or all real estate, if any, which may have been purchased by moneys arising either from the sale or growing out of the rents and profits of said undivided one-third of my real estate named in paragraph four (4) and also turn over to him all moneys or securities in his hands arising from the same.

"*Eighth.* Should the said property so conveyed to the said John F. Jarboe in trust as aforesaid, never be conveyed or transferred to the said Charles A. Jarboe during his lifetime by the said John F. Jarboe, or his successor in this trust, then in the event of the death of said Charles A. Jarboe, said John F. Jarboe, or his successor in this trust, shall convey and transfer said property and all proceeds, rents and profits of the same remaining in his hands to the heirs of said Charles A. Jarboe.

"*Ninth.* I give my gold watch and chain to my said son Charles A. Jarboe, but direct that my executrix shall not deliver the same to him until by his conduct and behavior he shall satisfy her that he will keep and take care of the same."

The case was submitted on an agreed statement of facts, which may be briefly stated as follows:

The testator died in February, 1886, leaving his wife, Emily, and two sons, the said John F. and Charles A. surviving him, and no other descendants. His widow accepted the provisions made for her under the will. John F. accepted the trust imposed upon him by the will and took charge of the trust estate. Charles A. married in November, 1885. After the death of the testator Agnes Jarboe was born of the marriage of Charles A. and his wife. There were no other children of the marriage. The said Charles A. died intestate in March 1891, and left surviving him his widow, Ada Jarboe, and only one descendant, the said Agnes. R. M. Latshaw is the administrator of the estate of Charles A. Defendant Fred. C. Hey is the curator of the said Agnes.

After taking charge and management of the said trust estate, the said John F. Jarboe, as trustee, sold portions of the real estate, and has in his possession a portion of the proceeds thereof. Other of said lands

are undisposed of.    After the death of the said Charles
his widow elected to take, in lieu of dower of the lands
of her husband, the share of a child therein.

The said Charles A. Jarboe, in the opinion of the
trustee, never reformed, and never became capable of
taking care of, or using for proper purposes, any of the
property and no part was given him by the trustee,
except as in the third paragraph of the will directed.
All parties interested are made parties to the suit.

The parties make claim to the trust estate under
the will as follows:  The widow, now Ada Kenworthy,
makes claim to one-half of the entire estate.    Latshaw,
as administrator of Charles A., claims the right to the
possession of all the personal property.   Hey, as curator
of Agnes Jarboe, claims the entire estate.

I.    The will is carefully drawn and the intention
of the testator very clearly expressed, so far, at least, as
it affects the disposition and subsequent control and
management of the property during the continuance of
the trust.    That it was not the intention of the testator
that his son Charles should have the possession or con-
trol of the property until he should show a proper
reformation, could not have been more clearly and
decidedly declared.    It is equally clear that the trustee
was constituted the sole judge of the sufficiency of the
reformation which would authorize a transfer of the
estate.    On these questions there is no dispute between
counsel.

The contention of the counsel for the widow of
Charles is that the trustee only took under the will the
legal estate in trust, and that the equitable estate, in
fee simple, vested in Charles and on his death
descended through him to his heirs.    In other words,
that, taking the whole instrument and all its provisions
and construing them together, it appears that the tes-
tator intended that an equitable fee simple estate of

inheritance should be vested in Charles A. in which his widow should be entitled to dower. It is not questioned that the contingency, upon which the trustee was required to convey the estate to Charles, never arose; and there is no claim that the trustee acted from such selfish, corrupt or improper motives as to require the intervention of a court of equity to enforce a compliance with the duties enjoined upon him. Stripped, then, of all collateral matters, this contention resolves itself into the one question whether Charles at his death was vested with such an estate in the trust property as would entitle the widow to dower therein.

The statute provides that "every widow shall be endowed of the third part of all the lands whereof her husband, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law." Section 4513. So there can be no doubt that, if the trustee under the provisions of the will held the estate of inheritance in the property in trust for the use of Charles, then his widow is entitled to dower therein.

The paramount rule for the construction of wills, and to which all others must yield, as declared by the courts and emphasized by the statute, requires that due regard shall be given to the directions of the will and to the true intent of the testator, when not inconsistent with the positive rules of law. R. S. 1889, sec. 8916; *Lampert v. Haydel*, 96 Mo. 441; *Redman v. Barger*, 118 Mo. 568; *Nichols v. Boswell*, 103 Mo. 155; *Smith v. Bell*, 6 Peters, 75.

It is true, as claimed, that a well settled rule of construction requires that all estates be considered vested, rather than contingent. *Collier's Will*, 40 Mo. 322. It is insisted that the language of this will fairly admits of such a construction as will vest the estate in

Charles, and, under this rule, such an interpretation should be given it.

There can be no doubt, and, indeed, counsel for the widow do not contend to the contrary, that the fourth clause of the will vests the legal title to the property absolutely in John F. Jarboe in trust, and the only beneficial purpose of the trust therein named is to provide Charles with board and clothing, out of the income thereof. Any declaration of the purposes of the trust must be found in other clauses of the will.

An examination of the remaining clauses will be found barren of any provisions or the slightest expressions indicating an intention to vest the equitable estate in fee simple in Charles. On the contrary, a manifest purpose to preserve the property, and to prevent a vesting thereof in Charles, runs through the whole and each clause of the will. Full power is given the trustee to sell and convey the estate, and to reinvest the proceeds at his own discretion, and upon his own judgment. No word is found in any provision which gives to Charles any right to the possession, control or beneficial use of the property at any time, except upon the express conditions specified in the will.

Learning from the provisions of the will that the testator had no confidence in the ability or disposition of his son Charles to care for and preserve the estate, the intention to put it beyond his power to waste and squander it is perfectly clear. We know of no rule of law or policy which would prevent the testator from placing such safeguards around the property. It has recently been held by this court, upon a thorough review of authority, in an exhaustive and convincing opinion, that a testator could, by placing the estate in the hands of trustees, protect the income from the creditors and purchasers of the beneficiaries of the trust, though the beneficial use and enjoyment of the

income for life was expressly granted them. *Lampert v. Haydel*, 96 Mo. 441. Thus it is shown that a testator can determine and provide for the manner in which the income of the property shall be used by the beneficiary, though in doing so it prevents its alienation.

The *Collier will case* is cited by appellant and relied upon as supporting the view that the equitable estate vested in Charles upon the death of the testator. The will considered in that case, in some of its provisions, undoubtedly has similarity to this one; but one marked and controlling difference is, that Collier's will required the trustees, when a named son should attain the age of twenty-one years, to settle up the estate and divide it among the children of the testator, and it made provision how the division should be made. It is true the trustees in making division, were given some discretion on certain contingencies which might thereafter arise, but no discretion was given them to make discriminations for causes then existing. The conditions were subsequent and never arose.

It is said by Judge WAGNER in that case: "But it is said that no interest is conferred upon the children except in the directions to the trustees. We think otherwise. There are directions to pay, to transfer, divide and partition, which import a gift, unless they are restricted by some inconsistent limitation or condition. The irresistible inference is that a gift was intended in the constitution of the trust, and that the gift to the trustees was for the benefit of the children only." The intimation of the learned Judge clearly is, that had no interest been conferred upon the children, there would have been no vested estate in them.

II. It is said further that, by the directions to the trustees, contained in the eighth paragraph of the will, to convey the property to the heirs of the said

Charles in the event that it was not conveyed to him during his lifetime, indicates an intention of the testator that Charles should take a vested estate in fee simple; that such direction was equivalent to saying that the heirs of Charles should take by inheritance from him, and not as purchasers under the will.

It is true "the word 'heirs' will be considered as a word of limitation and not of purchase, unless the will shows clearly that it is used to designate a new class of beneficiaries." *Chew v. Keller,* 100 Mo. 369. But the word, as used in this will, does clearly designate a different class of beneficiaries. It is true, as argued, that the testator does, throughout this will, recognize the natural claim of Charles, as one of his children, to an equal portion of his estate with his other son; and every expression in the will shows an affectionate desire to make an equal division between them. If Charles had been deemed worthy of his confidence he would doubtless have received this estate unfettered by any conditions. But it also appears that he was satisfied of his unworthiness, and wished to preserve the estate, and for that purpose to place it out of reach, not only of his own extravagance, but beyond the reach also of his creditors, either before or after his death. Hence in his desire to deal equally with his sons, and at the same time preserve the estate, he designated the heirs of Charles as a new class of beneficiaries that they might take the estate under the will unincumbered by any improvidence of Charles. It is true, the estate might have been preserved by provisions similar to those used in Jacob's will (*Lampert v. Haydel, supra*), but it is well known that such power was doubted by the legal profession prior to that decision. We do not think that the use of the word heirs, in the eighth clause, indicates an intention to give Charles an equitable estate of inheritance, and such a construction would be repug-

nant to the manifest intention of the testator, which permeates the whole will, that Charles should take no interest, except on condition.

III.   Appellant next says that, though a vested equitable fee did not pass to Charles, yet, under paragraph eight, the testator intended that the lands should pass to the heirs of Charles exactly as if the latter had an estate of inheritance therein carrying with them all. the incidents of an inherited estate, one of which is the right of the widow to dower; that, therefore, the widow is entitled to dower by implication.   We are unable to see any force in this contention, if we are correct in the views hereinbefore expressed that the heirs took as purchasers under the will and not by some implied inheritance from Charles.

But plaintiff cites with reliance, in support of the right of the widow to dower by implication, the case of *Jacob v. Jacob*, 67 Ky. 110.   The court held that the will under consideration in that case, gave a life estate to the husband, though the lands were devised to the trustees, as in the case at bar.   The will provided that, after the death of the husband, the property should be conveyed to his descendants, if there be any such then living, in the same manner as it would pass by the law of descent if the same were to descend to him; if there are no descendants, then the same should be conveyed to his heirs.

The court held that these provisions manifested an intention in the testator that, should any of his sons die, his surviving wife should be endowed, as he devises the remainder to those who would take under the laws of descent from the holder of the life estate.   The court then says futher on: "The appellant (the widow) is entitled, as *legatee* by implication, to so much as she would have taken from her deceased intestate husband, had he owned the estate."

Without agreeing to the reasoning of the court, I think it can be safely asserted that the same conclusion would not have been reached, had the husband taken no interest whatever in the estate. While dower is much favored by law, it can not be implied when the husband had no seizin either legal or equitable. It may be said further that Judge ROBERTSON, in a separate opinion, held that the title was vested in the husband, and the use only was limited to the beneficial owner of the title. With that construction, the conclusion that the wife was endowed necessarily followed. We do not think the provisions of that will, as interpreted by that court, bear such analogy to those here under consideration as to make the case pertinent as an authority.

IV. The intention of the testator as expressed in this will is so manifest as to leave no reasonable room for doubt. The entire estate was devised to the trustee who was invested with discretionary power to convey it to Charles upon the condition precedent, that, in the opinion of the trustee, the said Charles should show evidence of reformation. There are no technical words, which distinguish conditions as precedent, or subsequent, and, "whether they be the one or the other, is matter of construction, and depends upon the intention of the party creating the estate. A precedent condition is one which must take place before the estate can vest, or be enlarged." 4 Kent's Commentaries, star pp. 124, 125.

There can be no doubt that the testator intended that the proper reformation should be shown by Charles before the trustees should convey the property to him. "Where it is left to the discretion of the trustees to make or withhold a gift or appointment of the trust property to a specified donee, or *cestui que trust*, or class of donees," is one class of the discretionary powers of trustees men-

VOL. 122—23

tioned by Perry in his work on Trusts, section 508. "In this class," he says, " if it is a condition precedent to the gift, legacy or other interest, that the trustees shall exercise their power in favor of the donee, whether of appointment or assent, no interest will vest in the donee until the power is exercised and if the trustees refuse to exercise it, the gift can not bee nforced." See, also, *West v. Moore*, 37 Miss. 114; *Dull's Estate*, 137 Pa. St. 113.

The condition in this will being precedent, and the trustee never having exercised the discretion conferred upon him, by conveying the property to Charles, the estate passed under the will to Agnes, the only child of Charles.

V. Appellant, the widow, is not an heir of her husband who can take under the eighth clause of the will, either as the word heir is understood at common law, or under our statutes of descents. At common law an heir is "one born or begotten in lawful wedlock, and upon whom the law casts the estate in lands, tenements and hereditaments immediately upon the death of his ancestor." Bouvier's Law Dic., title, Heir. The statute of our state changes the common law in no respect so as to make the widow an heir, except as is done under the statutes of descents. By that statute it is provided that, if there be no children or their descendants, father, mother, brother or sister or their descendants, then the estate of a deceased person shall descend to the husband or wife. As Charles Jarboe left a child surving him, the widow does not answer the description of heir contained in the will. The child was the sole heir and took the entire estate under the will. Judgment affirmed. All concur.