ERNEST J. KRAUSE, JR., Appellant, v. JEANNETTE INVESTMENT COMPANY, a Corporation, CHARLES M. HUTTIG, R. D. MUSSER, E. L. MCCOLM and LAURA MUSSER MCCOLM.—62 S. W. (2d) 890.

Division Two, August 12, 1933.

510

*Marion C. Early, A. E. L. Gardner* and *Ivon Lodge* for appellant.

*Jones, Hocker, Sullivan & Gladney* for respondents.

TIPTON, J.—The appellant sued the respondents claiming that his deceased wife, Jeanette Huttig Krause, died owning some property given to her by Annie E. Huttig, her mother, during her lifetime, and, also, under her mother's will. Appellant married Jeanette Huttig Krause on the 20th day of July, 1920, and they lived together until her death on the 3d day of January, 1922. In the year 1914, Annie E. Huttig caused to be organized the Jeannette Investment Company and transferred a portion of her estate to this corporation. At that time one share each was put in the name of A. J. Siegel, her business adviser; the late Eugene H. Angert, her legal adviser; R. D. Musser, her brother; and E. L. McColm, her brother-in-law. The remaining 146 shares were issued to herself. She and these men made up the board of directors, and the shares issued to these men were indorsed and returned to her. She had two children, Jeanette and Charles. When Jeanette, the eldest of the two children, attained her majority, the share that had been issued to Mr. Angert was transferred to her, and she took his place on the board of directors. She, also, indorsed her qualifying share and returned it to her mother. Mr. Musser lived in the State of Minnesota and Mr. McColm lived in Iowa. Mrs. Huttig lived in the city of St. Louis where Mr. Siegel lived. On January 29, 1919, Mrs. Huttig transferred two certificates of fifty shares each of the capital stock of this corporation to herself and A. J. Siegel, as trustees, and she executed a declaration of trust; which declaration recited that Mrs. Huttig had "this day transferred and delivered" to herself and Mr. Siegel the one hundred shares of stock. Among other things in the trust declaration, it was

recited that in the event of Mr. Siegel's death, Mrs. Huttig should appoint his successor. In the case of her own death, the trust was to devolve upon the respondents, Siegel, Musser, McColm and Laura Musser McColm, Mrs. Huttig's sister. The trust was to continue with the survivors of these so long as there were three in number, with provisions of filling any vacancies in the trusteeship so as to keep the number up to three. On the same date, Mrs. Huttig executed her last will and testament. She left the residue of her estate in trust with the above named persons who were the same trustees under the declaration of trust. The pertinent parts of the trust declaration and the trust created by the will, which are identical except that paragraph 4 is omitted in the will, are as follows:

"Second. The trustees shall apply such portion of the income derived from the trust estate as they, in their sole discretion, deem best for the benefit, support and education of each of said children until he or she arrives at the age of thirty (30) years; and they may, likewise in their sole discretion, pay to each child the whole or any part of the income derived from his or her share of said trust estate until he or she arrives at said age. When each of said children reaches the age of thirty (30) years, the trustees shall pay, transfer and deliver to such child his or her one-half share of the principal and accumulated income of said trust estate, whereupon the trust as to such child shall cease and determine.

"Third. In the event of the death of either or both of said children before receiving his or her part of said trust estate, the trustees shall hold or dispose of said share of the trust estate belonging to such deceased child or children in the manner directed by his or/and her last will and testament. In the event of the death of either child prior to attaining the age of thirty (30) years, leaving no last will and testament, the trustees shall pay over, transfer and deliver the share of or interest in the trust estate belonging to such deceased child to his or her bodily heirs born in lawful wedlock; and if there be no such bodily heirs, then to the heirs at law of such deceased child or children; provided, however, that if either of said children, before reaching the age of thirty (30) years, becomes entitled to receive the whole or a part of the share of the trust estate of his sister or her brother as the heir at law of such deceased sister or brother, then said share shall be held by the trustees for such child, under the terms and provisions of this trust agreement, until he or she reaches the age of thirty (30) years.

"Fourth. The Trustees may, in their discretion, advance to either child, or to both children, any part of the principal of said trust estate."

On February 20, 1919, Mrs Huttig executed another declaration of trust in exactly the same language as the one of January 29, 1919, except that instead of one hundred shares of the Jeannette Investment

Company being placed at trust, there were only sixty shares. The certificates issued with the prior declaration were canceled, and a new certificate of forty shares was put back in the name of Mrs. Huttig, and certificates of the sixty shares were placed in the names of the trustees. In November, 1919, Mrs. Huttig died and as previously stated, under her last will and testament a trust estate was created, the terms of which were identical with the trust estate created under the declarations of trust of January and February of 1919. On January 3, 1922, Jeanette died under the age of thirty. She died childless and had not adopted a child or children, and left no will except a tentative will which was not executed.

During the married life of Jeanette Krause she received checks regularly from the Jeannette Investment Company. As the business was handled by Mr. Siegel, he caused dividends to be declared by the Jeannette Investment Company at irregular intervals to offset these advances that had been made to the two children. In 1922, appellant employed his brother-in-law, Leighton Shields, to investigate as to whether or not he was entitled to inherit anything from his deceased wife. After some investigation, in which the trust of January, 1919, and the probate records were examined by Mr. Shields, the trustees gave to the appellant the sum of $100,000, which was understood to have been given to him not on account of any legal obligations, but rather because the trustees felt that it was a moral duty that they owed to the appellant. His attorney readily admitted that under the instruments and probate records the appellant was not entitled to anything. Upon receiving the $100,000 from the trustees, the appellant executed a release, releasing the trust estates from any claim that he might have against them.

The appellant remarried and lived in California at the time of this suit. Shortly before the filing of this suit, he again went through some of the papers belonging to Jeanette Krause and found a letter dated February, 1920, written by Mr. Musser to Mrs. Huttig and Mr. Siegel mentioning something about the February trust of 1919; also, a statement of the then financial condition of the Jeannette Investment Company. The appellant complained that in the inventory of the probate court this stock was carried at par when in reality it was greatly in excess of that amount. After seeing this letter the appellant then investigated and found out about the trust of February, 1919. He brought this suit on the theory that his wife had a vested title to the property that was given to her in the trust agreement of February, 1919, and he also contended that she was entitled to one-half of the property left by Mrs. Huttig under her last will and testament. The respondents pleaded the general denial; also the release as a bar to this action; and further that this action he may have had was barred by laches. The respondents filed a cross-action in which they asked the court by its decree to construe the declara-

tions of trust, and the last will and testament of Annie E. Huttig. It was the contention of the respondents that under the declaration of trust of January that the property became vested and that the declaration of trust of February, 1919, was invalid for that reason. The trial court dismissed the bill for the want of equity and gave the following directions to the trustees:

"1. That the release executed by plaintiff Earnest J. Krause, Jr., to the trustees, introduced in evidence in this cause and dated March 27, 1922, is valid and binding and fully releases whatever interest he might have had through his late wife, Jeanette Huttig Krause, in or to property held by the trustees, either under the conveyance and declaration of trust of Annie E. Huttig in her lifetime, or under her last will and testament.

"2. That the children of Annie E. Huttig took no vested estate under the declaration of and conveyance in trust executed by Annie E. Huttig under date January 29, 1919, to A. J. Siegel and Annie E. Huttig, trustees; nor under a similar declaration of trust executed by Annie E. Huttig to the same parties as trustees, dated February 20, 1919; nor under the last will and testament of the said Annie E. Huttig.

"3. That the plaintiff Earnest J. Krause, Jr., the widower of the late Jeanette Huttig Krause, took and takes nothing, either under the declarations of trust aforesaid of Annie E. Huttig, or either of them, or under the last will and testament of the said Annie E. Huttig.

"4. That the purported will of Jeanette Huttig Krause, not having being witnessed as required by law, was not effectual as the execution of the powers conferred upon her by Annie E. Huttig in the declarations of trust aforesaid and in the last will and testament of the said Annie E. Huttig.

"5. Under the conveyance and declaration of trust of January 29, 1919, executed by Annie E. Huttig, as aforesaid, the trustees hold one hundred (100) shares of the capital stock of Jeannette Investment Company, and the purported conveyance and declaration of trust executed by her under date of February 20, 1919, was and is ineffectual and void. All of the estate of Annie E. Huttig other than said one hundred (100) shares of the capital stock of the Jeannette Investment Company the trustees hold under her last will and testament.

"6. Jeanette Huttig Krause having died before attaining the age of thirty (30) years, without descendants, and leaving no valid will and testament, upon the arrival of Charles M. Huttig, the only other child of Annie E. Huttig, at the age of thirty (30) years, the trustees under the conveyance and declaration of trust aforesaid and under the last will and testament of Annie E. Huttig will be obliged to

transfer the entire estate—principal and accumulated income—to him; if he do not attain that age, then, at his death, to whom he may appoint for the purpose by his valid last will and testament, if any; and if no such appointment in that matter by him, then, at his death prior to attaining the age of thirty (30) years, to his heirs at law.

"It is further adjudged that defendants recover of plaintiff, Earnest J. Krause, Jr., their costs herein expended, for which execution may issue."

██ The appellant contends that Jeanette Huttig Krause took a vested title in one-half the *corpus* of the estate of Annie E. Huttig, and a vested title to the thirty shares of stock set aside for her under the declaration and conveyance in trust of her mother, Annie E. Huttig, dated February 20, 1919. As the terms creating the declaration of trust in the instrument of January 29, 1919, and of the instrument dated February 20, 1919, were identical and, also, the terms of the trust created under Annie E. Huttig's will were identical, we shall proceed to determine what estate Jeanette Huttig Krause took under the trust created by the will of her mother, and under the terms of the declaration of the trust instrument of February 20, 1919. We will later dispose of the validity of the two trust declarations created under the instruments dated January 29, 1919, and February 20, 1919, respectively. It is well-settled law in this State that the cardinal rule to be observed in the construction of instruments of the character in question is to ascertain the donor's intention as is deductible from the instrument as a whole and then to give effect to such intention if it is not in conflict with positive rules of law. The instrument is to be so construed, if possible, as to give it effect and to carry out the maker's intention. [Long v. St. Louis Union Trust Co., 332 Mo. 288, 57 S. W. (2d) 1071, and cases cited therein; 39 Cyc. 228.] With these well-established rules in mind we look to the provisions of trust in this case to discover the grantor's meaning and intention as therein expressed.

██ Under the two declarations of trust the trustees were the same. After the death of Mrs. Huttig, the trustees under these declarations of trust and under the trust created by her will were the same. As above stated the provisions of the trusts were identical. Under the provisions of the trust the title to the trust estate was held by the trustees. As to the income of the trust estate, the trustees were to pay to the two children of Mrs. Huttig, Jeanette and Charles, any such portion or all of the income for their education or support until such child reached the age of thirty years, "as they in their sole discretion deem best." The trustees were to add any income not so expended to the principal. This created an active trust. [Graham v. More (Mo.), 189 S. W. 1186.] As each child attained the age of thirty years, his or her aliquot portion of the trust estate

was to be paid over, transferred, and delivered to him or her by the trustees. In the case of death before that age, the trustees were to pay over, transfer, and deliver the aliquot portion of trust estate in the following order: (first) to the appointees of the deceased child by the last will and testament; (second) to the heirs of the body of the decedent born in lawful wedlock; and (third) to his heirs at law.

It is conceded that Jeanette, wife of the appellant, died before reaching the age of thirty years; that she did not exercise the power of appointment by leaving a valid will; that she died leaving no heir of her body.

As we view the trust, Jeanette had only a beneficial interest in the trust estate for her support and education, because she died before reaching the age of thirty years. In the first place, the title to the trust estate was vested in the trustees. It was an active trust, because the trustees were clothed with power to give to each beneficiary any portion of the income or portion of the estate (under clause 4) that they in their discretion saw fit. When Jeanette reached the age of thirty, then her aliquot share was to be paid, transferred, and delivered by the trustees to her. This lends color to the view that there was no intention to convey an estate to Jeanette. [Graham v. More, supra.] The mere fact that she had a right to dispose of her share of the trust estate by executing a will before she reached the age of thirty years does not tend to show that any estate was vested in her, because the donee under a power of appointment takes directly from the original donor of the power and not under the donee. [Armor v. Frey, 253 Mo. 447, 161 S. W. 829.] Under the terms of the instruments creating the trusts, Jeanette did not have any right to possession, control, or the use of the property, specified in these instruments. Nor do we believe that Jeanette could have conveyed an absolute interest in her share in the trust estate at any time prior to her death.

"But when the right given is that of support out of a fund which is given to another, the right is in its nature unalienable, and the intention of the donor that it shall not be aliened is presumed, even where the gift is of real estate which the beneficiary is authorized to manage and to use so much of the profits as he needs for 'decent and comfortable support.' So where the trust deed leaves the amount of expenditure to the discretion of the trustee the creditors of the beneficiary have no greater interest in the property than the beneficiary possesses and cannot subject the property itself or the income thereof to the payment of their claims." [26 R. C. L. 117.]

In Jarboe v. Hey, 122 Mo. 341, l. c. 349, 26 S. W. 968, we said:

"An examination of the remaining clauses will be found barren of any provisions or the slightest expressions indicating an intention to vest the equitable estate in fee simple in Charles. On the contrary, a manifest purpose to preserve the property, and to prevent a vest-

ing thereof in Charles, runs through the whole and each clause of the will. Full power is given the trustee to sell and convey the estate, and to reinvest the proceeds at his own discretion, and upon his own judgment. No word is found in any provision which gives to Charles any right to the possession, control or beneficial use of the property at any time, except upon the express conditions specified in the will.''

Jeanette had no such interest in the trust funds at the time of her death that could be made subject to the payment of her debts and, therefore, the appellant was not entitled to one-half of the property held in trust for her under Section 324, Revised Statutes 1929.

If the appellant took anything, it is because he came with the devolution prescribed by the settlor of the trust as an ''heir at law'' of his wife, Jeanette. In determining whether or not the appellant was the ''heir at law'' of his wife, we are governed by the laws of the State of Missouri, because the instruments creating the trust estates were executed in Missouri, the parties lived in Missouri, and the trust is a Missouri trust.

Pertinent parts of Section 306, Revised Statutes 1929, are as follows:

''When any person having title to any real estate of inheritance, or personal estate undisposed of, or otherwise, limited by marriage settlement, shall die intestate as to such estate; it shall descend and be distributed in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following course: First, to his children, or their descendants, in equal parts; second, if there be no children, or their descendants, then to his father, mother, brother and sisters, and their descendants in equal parts; third, if there be no children, or their descendants, father, mother, brother or sister, nor their descendants, then to the husband or wife.''

It is to be noted that this section deals both with real estate and personal property. In the case of Waddle v. Frazier, 245 Mo. 391, l. c. 401, 402, 151 S. W. 87, we said:

''Obviously, the husband could take no interest directly under this section, in land in which his wife owned a life estate only. Nor could he claim heirship under the law of descent (Sec. 332, R. S. 1909), his wife having left brothers and sisters surviving her. The claim of heirship on the part of appellant must, therefore, rest on the proposition that section 350, supra, constitutes him an heir of his wife so as to bring him within the final clause of the law in force in 1855, and quoted above. We think this proposition unsound. Section 350, giving the husband an interest in his wife's real estate, was enacted to equalize the rights of widows and widowers. That which the husband takes under this section is in the nature of dower. His claims are limited to property belonging to her at her death. It does not make him his wife's heir in the full sense of that term. The term 'heirs,'

in its accepted legal signification, means kindred who by the law of descent are entitled to an interest in real estate (Ruggles v. Randall, 70 Conn. 44; Dodge's Appeal, 106 Pa. St. 216; Jarboe v. Hey, 122 Mo. 1. c. 354); and, under the authorities, excludes the husband or wife, where there is nothing in the connection in which it is used to indicate otherwise. [Dodge's Appeal, supra; Fabens v. Fabens, 141 Mass. 395; Jarboe v. Hey, supra; Clarkson v. Clarkson, 125 Mo. 381; 15 Am. & Eng. Ency. Law (2 Ed.) 329.]''

In Jarboe v. Hey, supra, 1. c. 354, we said:

''Appellant, the widow, is not an heir of her husband who can take under the eighth clause of the will, either as the word heir is understood at common law, or under our statutes of descents. At common law an heir is 'one born or begotten in lawful wedlock, and upon whom the law casts the estate in lands, tenements and hereditaments immediately upon the death of his ancestor.' [Bouvier's Law Dic., title, Heir.] The statute of our State changes the common law in no respect so as to make the widow an heir, except as is done under the statutes of descents. By that statute it is provided that, if there be no children or their descendants, father, mother, brother, or sister or their descendants, then the estate of a deceased person shall descend to the husband or wife. As Charles Jarboe left a child surviving him, the widow does not answer the description of heir contained in the will. The child was the sole heir and took the entire estate under the will. Judgment affirmed. All concur.''

In the case of Graham v. More, supra, we said:

''Under this statute the wife is not an heir at law, unless there are (1) no children or their descendants, and (2) no father, mother, brothers, or sisters, of the deceased husband. . . . This statute contemplates collateral heirs, upon whom is cast the remaining half of the estate. So that under any view it is clear the petition fails to show a cause of action in the widow. Henry T. Jones had the right to limit the beneficiaries in his will. He had the right to prefer the collateral heirs of the said Chas. W. Jones to the wife. He did fix as his beneficiaries the 'heirs at law' of Charles W. Jones, as such heirs at law were set out and defined by our statutes of descents and distributions. The wife is not one of such heirs, until she avers and shows that there are no such heirs in existence, as are named in clauses 1 and 2 of said section 332.''

At the time of Jeanette's death, she left a brother and under our statute this excluded the husband from inheriting as her ''heir at law.'' As pointed out in the case of Jarboe v. Hey, supra, the appellant was not the ''heir at law'' of his wife. We believe that as the trust instruments were drawn, the use of such phrases as ''heirs of her body'' and ''heirs at law'' were used in a technical sense, and that it was not the intention of the settlor of the trust estate to include the husband as an heir. For that reason, we do not believe

that the appellant was entitled to anything out of the trust fund created by the will of Mrs. Huttig, or under the declaration of trust dated February 20, 1919 (assuming for the time being that this instrument was effective).

On January 29, 1919, Mrs. Huttig transferred to Annie E. Huttig and A. J. Siegel, trustees, one hundred shares of stock, in accordance with the trust agreement of that date. This was a present transfer of the stock to the trustees and vested them with the title. [Christ v. Kuehne, 172 Mo. 118, 72 S. W. 537; O'Day v. Meadows, 194 Mo. 588, 92 S. W. 657; Sims v. Brown, 252 Mo. 58, 158 S. W. 624; Priest v. McFarland, 262 Mo. 229, 171 S. W. 62; Tillman v. Carthage, 297 Mo. 74, 247 S. W. 992.]

The mere fact that this declaration of trust was executed on the same day that Mrs. Huttig's will was written would not prevent it from becoming vested. The declaration of trust of January was made for the purpose of giving the two children funds for immediate support and education, while the trust created by the will was for their support after the death of Mrs. Huttig.

"Where contracts or writings are in fact independent, however, they should not be considered together, although the parties may be the same, or the same subject-matter may be concerned." [13 C. J. 529.]

As there were two different objects to be accomplished by the two instruments, they must be considered independently of each other. In Frank v. Heimann, 302 Mo. 334, l. c. 345, 258 S. W. 1000, we said:

"It is not open to question but that a completely executed voluntary trust will be enforced. [Rollestone v. National Bank of Commerce, 299 Mo. 57; Harding v. St. Louis Union Trust Co., 276 Mo. 136; Northrip v. Burge, 255 Mo. 641; Harris Banking Co. v. Miller, 190 Mo. 640; In re Estate of Soulard, 141 Mo. 642.] It is likewise well settled that such a trust is irrevocable, unless the power of revocation be reserved. [Stephens v. Moore, 249 S. W. 601, 603.]"

In Stephens v. Moore, 298 Mo. 215, l. c. 226, 249 S. W. 601, we said:

"We have heretofore announced our adherence to the doctrine, supported by the overwhelming weight of authority, that a completely executed trust, even though it be a voluntary one, without reservation of power of revocation can only be revoked by the consent of all the beneficiaries."

In Harding v. St. Louis Union Trust Co., 276 Mo. 136, l. c. 142, 207 S. W. 68, we said:

"That an executed trust may be validly created in personal property by express declaration and present conveyance of such property to a definite beneficiary, and that when the trust has been completed, it is irrevocable, though voluntary, is the settled law of Missouri and elsewhere."

In Ewing v. Shannahan, 113 Mo. 188, l. c. 195; 20 S. W. 1065, we said:

"There is here a perfect, completed, executed trust; and this being so it is immaterial whether the trust is to be deemed a voluntary one or made upon a valuable consideration, for being a perfect and completed trust it must be enforced in either event. . . . Now, a completed trust without reservation of power of revocation can only be revoked by the consent of all of the beneficiaries."

The January trust was a completely executed voluntary trust without the power of revocation being reserved, and the consent of the beneficiaries was not obtained to make the change in the number of shares held by the trustees in the Jeannette Investment Company. The trial court correctly held that the February trust was void.

The trust created by the instrument dated February 20, 1919, was an attempt to change the January trust and not an attempt to create a new trust. In the first place there were only 150 shares in the Jeannette Investment Company. If there were created two different trusts, then it would have been necessary to have had 160 shares. No shares were in fact transferred to the trustees in February. There was a transfer by the trustees to Mrs. Huttig, individually. The certificates previously issued to the trustees were pasted back in the stock book, and canceled; a certificate for forty shares issued to Annie E. Huttig, individually; and new certificates were issued to the trustees for sixty shares.

We believe the instructions given by the trial court to the trustees on their cross-action were correct.

Inasmuch as we have held that the appellant is not entitled to share in the trust estate created by Mrs. Huttig, either by her will or by the trust of January, it is not necessary for us to decide the questions that the appellant's claim is barred by the defense of laches or by his release executed March 27, 1922. The judgment and decree of the trial court is accordingly affirmed. *Ellison, P. J.,* concurs; *Leedy, J.,* not sitting.