## FUNSTEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12958.

Circuit Court of Appeals, Eighth Circuit.

April 23, 1945.

806

Stanley S. Waite, of St. Louis, Mo. (Abraham Lowenhaupt and Fred L. Kuhlmann, both of St. Louis, Mo., on the brief), for petitioner.

Robert Koerner, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

Petitioner seeks a review of a decision of the Tax Court holding him liable under section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 22(a), for deficiencies of $20,074.98, $28,288.30, $35,369.-35, and $23,200.57, in his personal income taxes for the years 1938, 1939, 1940, and 1941, respectively, on the income from some trusts which he had created for his wife and children, and of which he had constituted himself the sole trustee.

The case is part of the flood of tax litigation loosed by Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, with the troublesome application of whose doctrine we have most recently had occasion to deal in Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 148 F.2d 491.

Three trusts are involved, two of which were created in 1931 and the third in 1932. The trust instruments are identical, except that a different one of petitioner's three children is named as co-beneficiary with his wife in each trust. All of the children were minors at the time the trusts were created and during the taxable years involved.

Petitioner was a resident of Missouri. The property which he put into the trusts consisted of shares of capital stock in R. E. Funsten Company, a Missouri corporation, of which he was a stockholder, director and vice-president. At the times here involved, each trust held 34 shares of the 183 shares which petitioner had owned before he created the trusts, out of the total 750 shares of stock which the corporation had outstanding.

By the terms of the trusts, petitioner was to be sole trustee during his lifetime, or until his refusal or inability to serve. He had the right as trustee to vote the stock which he had put into the trusts. He was authorized further, among other things, to hold title to any or all of the trust property in his own name "without the addition of any word or words showing the fiduciary capacity"; to sell any trust property for cash or on credit at public or private sale, to grant options, and to make exchanges; "to purchase property from or lend money to the Grantor's [petitioner's] estate with or without security and without liability for loss"; to make investments in common and preferred stocks, debentures, and any other kinds of property, "without being limited to the class of securities in which Trustees are authorized by law or any rule of court to invest trust funds"; "to exercise all conversion, subscription, voting and other rights * * * pertaining to any such property, and to grant proxies"; and, in general, to do any act "with relation to such property as if [he were] the absolute owner thereof and in connection therewith to enter into any covenants or agreements binding the trust estate." There was an exculpation clause, under which the trustee was not to be liable "for any loss sustained by the trust estate by reason of the purchase, retention, sale or exchange of any investment by the Trustee in good faith." The trustee had the right also "to apportion extraordinary and stock dividends received * * * between income and principal, which apportionment shall fully protect the Trustee with respect to any action taken on payments made in reliance thereon." The trusts were all subject to a spendthrift provision, which prevented any anticipation or assignment by a beneficiary and any appropriation by creditors.

"Section Sixth" of each trust instrument provided that "The Grantor reserves the right, from time to time, by an instrument in writing * * * to change or modify any of the administrative provisions of this agreement, and to change any beneficial interest hereunder," and, on compli-

ance with a formal condition (which was wholly within petitioner's control), "to amend or revoke this trust in whole or in part, and to revest in himself title to any part of the corpus thereof," but "no part of the income of the trust shall be distributed to the Grantor or be held or accumulated for future distribution to the Grantor."

"Section Second" of each trust instrument provided that "The Trustee shall, during the lifetime of the Grantor, accumulate the net income derived from the trust estate and keep the same in a separate account, which shall become a part of the principal account upon the death of the Grantor; provided that this accumulated net income account shall not be subject to revocation by the Grantor under the terms of Section Sixth hereof, but shall be held for the sole benefit of the Grantor's wife * * * and [the named child-beneficiary] and such amounts out of the net income as the Trustee may in writing direct shall be paid over to the Grantor's said wife and [child-beneficiary]." Section Second further provided that upon petitioner's death a one-fourth part of the accumulated net income account was to be added to a similar part of the principal and to be held for the benefit of petitioner's wife during her lifetime, and the other three-fourths part was to be added to the rest of the principal and to be held for the benefit of the child-beneficiary, with provision for partial distributions of the principal to the child-beneficiary at successive ages and for ultimate disposition of any possible remainder, after the death of both the wife and child-beneficiary, to the testamentary appointees, descendants, or heirs at law of the child-beneficiary.

After the trusts became operative, but before the taxable years involved, petitioner executed an amendment to each trust instrument providing that, whereas he had previously "reserved the right to alter, amend or revoke its terms * * * I therefore hereby declare and give [the original trust property] * * * to hereafter become Part and Parcel of this Indenture under the terms as to income and

therefore irrevocable at any future date by me."[1]

The Tax Court's opinion says: "It is clear that these trusts bear some of the earmarks of a Clifford trust [Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.] We have here the intimate family relationship; the grantor acting as trustee with powers of management of the trust estate about as broad as could be devised; and a power in the grantor-trustee to pay over to the beneficiaries, or to accumulate, the net income of the trusts, in his sole discretion. In addition, though these are less clearly expressed, and their existence is not recognized by petitioner, we think there is also the power to change the beneficial interests at least as between the two named beneficiaries and to amend the administrative provisions of the trust indenture. * * * We think, under these facts, the petitioner retained so many of the rights and powers with respect to the trust property that he must be held to be taxable on the income under section 22(a)."

The Tax Court construed the effect of the amendment, by which petitioner attempted to put the original trust assets into the accumulated net income account, as having simply removed such property from the application of petitioner's right under Section Sixth to revoke the trusts generally[2] or free the assets from their trust dedication, but as not having affected the other two rights which petitioner had under this Section, i.e. "to change or modify any of the administrative provisions of this agreement, and to change any beneficial interest hereunder." Petitioner argues that these two powers never were applicable to the accumulated net income account, and that the Tax Court therefore erred in including them in the bundle of rights which it purported to appraise, in determining whether petitioner had retained the fair equivalent of economic ownership of the property.

We think there can be no doubt that it was the intention of the trust instruments that the trustee should have power to invest the funds of the accumulated net income

---

[1] In the amendment to one of the trusts, the language used was "I give outright [the original trust property] to become part of Income Account * * * and under terms of same therefore becomes irrevocable", but it is conceded that the legal effect of all the amendments is identical.

[2] The amendment did not rescind the general power to revoke the dedication as to any other property that petitioner might subsequently choose to put into the trusts as principal and not as part of the accumulated net income account.

account as well as those of the principal account, and petitioner's act in placing corporate stock directly in the accumulated net income account certainly evidences that this too was his construction. In this situation, since the trust instruments contained no special provisions covering the investment and other administrative handling of the accumulated income, such property logically and reasonably was subject to the general administrative provisions of the trusts—including the power reserved by petitioner to amend these provisions (as, for example, to modify the investment powers of himself as trustee or those of a subsequent trustee).

■ It seems clear also· that the general power reserved by petitioner to change any beneficial interest in the trusts similarly was applicable to the accumulated net income account—which here was the trust estate—to the extent, as the Tax Court held, that "he could at least shift the proportionate interests of the named beneficiaries in the trust funds." Respondent has argued in his brief that "the taxpayer's reserved power 'to change any beneficial interest hereunder' is unqualified, and includes the power to appoint the accumulated net income account—the trust estate here—to anyone other than to the grantor himself." That far, however, we do not go in our interpretation, nor did the Tax Court in its opinion, for Section Second contains an express provision that "this accumulated net income account shall· * * * be held for the sole benefit of the Grantor's wife * * * and [the named child-beneficiary]." Under Missouri law, as well as generally, the intention of a trust instrument is to be ascertained from reading its provisions as a whole. Krause v. Jeannette Inv. Co., 333 Mo. 509, 62 S.W.2d 890, 892; Brumbaugh v. Young, 235 Mo.App. 643, 144 S. W.2d 823, 826. The view of the Tax Court that the proportionate interests of the wife and child-beneficiary in the accumulated net income account could be shifted harmonizes the language of Section Second with the general power to change the beneficial interests in the trust, for the property in the accumulated net income account would thus still be held for the sole benefit of the wife and child-beneficiary, even though their proportionate interests could be shifted. It also gives due recognition, as against respondent's contention, to the principle applied by the Missouri courts that "all intendments of instruments creating trusts are in favor of the beneficiary of the trust and against the settlor." St. Louis Union Trust Co. v. Clarke, 352 Mo. 518, 178 S.W.2d 359, 365; Dibert v. D'Arcy, 248 Mo. 617, 154 S.W. 1116, 1125.

The Tax Court therefore, in our opinion, properly held that the power to change the administrative provisions of the trust and the power to shift the proportionate interests of the wife and the child-beneficiary in any disbursements made from the income account and in any remaining accumulation (which here constituted the trust estate) were entitled to be included in the bundle of rights which petitioner had retained in the property and which was to be appraised in the aggregate, on the basis of its practical equivalence to continued economic ownership of the estate.

There remains then the general question whether the Tax Court can be said as a matter of law to have erred in its appraisal of petitioner's rights and powers in relation to the property, as being so substantially equivalent in the family situation to what petitioner had held and enjoyed before the trust dedication that the income reasonably could be treated as being still taxable to him under section 22(a). The situation is in many of its aspects and incidents similar to that in the Stockstrom case, referred to above. Here, as in that case, petitioner has left himself free to enjoy, against the world, the outer attributes of his previous ownership and possession, by being privileged to hold title to the trust property in his own name, without fiduciary designation, and to do any act "with relation to such property as if [he were] the absolute owner thereof." He has left himself free, as before the dedication, to apply his earning powers and personal skill to the property, to make it beget more property in his scheme of family economics (as well as permit him to continue having the enjoyment of playing the game with the property and the satisfaction of still proving and vindicating his business capacity and investment judgment), by having retained the right to buy and sell stocks and bonds in the market and to make purchases, sales and exchanges of any other kind of property also—all without liability "for any loss sustained by the trust estate by reason of the purchase, retention, sale or exchange of any investment by the Trustee in good faith." He has left himself free to determine, as he did before the dedication, what payments should be made to the bene-

ficiaries out of the income so produced, and to fix the proportionate amounts or interests of the family-members in any payments made. He has also left himself free, as before the dedication—by having placed the property in the accumulated net income account—to distribute the trust estates to the beneficiaries at any time he sees fit, and to fix their proportionate interests in such a distribution. He has left the beneficiaries where they have no greater certainty of deriving any immediate economic benefit from the trust estates during his lifetime than before the dedication, by having thus made the payments and distributions subject to his discretion and by having included a spendthrift provision preventing any anticipation, assignment, or judicial seizure. He has retained also the other incidental powers which have been set out above, such as the right to change the administrative provisions of the trust, to vote the stock in the trusts, etc.[3]

On the basis of all this, the Tax Court would seem not to have been unwarranted in concluding, under the rationale of the Clifford case, that the situation was simply one, as we said in the Stockstrom case, "where, on the basis of such a continued enjoyment of the outer attributes of his previous ownership and possession, and of such a continued right to apply his earning powers and business skill to the property for the zest of the game and the further incrementation of the family pile, and of such a continued substantial control over the disbursement, apportionment, and accumulation of the income [and here also of the trust estate itself], he [the grantor] is willing to commit the apparent prior use and purpose of the property to a permanent dedication and to divest himself of the formality of legal title."

■■■ We pointed out in the Stockstrom case that, as the Supreme Court decisions now appear to stand, one who is the owner of property and makes a gift of it may still be taxable on its income, notwithstanding the legal effectiveness of the gift, if he has retained control of the substantial incidents and elements of his previous ownership, viewed in their practical significance in relation to the specific dedication. And the fagot of taxability would seem to be reinforced in a family situation, where the rights and powers retained manifestly were intended to make the property itself subject to the business skill and earning capacity of the grantor, beyond the scope of traditional fiduciary concept and function, and to permit such personal skill and capacity, by their general application to the dedicated property, to become a factor in the production of income. We further pointed out in the Stockstrom case that, even where an owner makes a gift in which he parts with both formal title and general control of property, he equally may be taxable on the income which the property produces, if he has substantially retained his previous power to dispose of the income. In either of these situations, as we noted in the Stockstrom case, although the donor or settlor may not be entitled personally to receive back any part of the property or of the income, his power to control the property or to dispose of the income may factually be so equivalent in the particular situation to economic ownership and enjoyment, as legally to constitute realization of economic benefit for revenue purposes and hence to give rise to taxability under section 22(a).

In the present case, as in the Stockstrom case, petitioner has retained a combination of certain control over the dedicated property and of certain power to dispose of income (by having discretion to accumulate or disburse and to shift the proportionate interests of the named beneficiaries). Beyond his powers of administrative control as such of the trust property, there is present the plenary right to make his business skill and personal capacity an earning factor, in connection with the trust property, in the production of income. There rests

---

[3] One of the powers possessed by the trustee, set out above, was "to purchase property from or lend money to the Grantor's estate with or without security and without liability for loss". Petitioner argues that the use of the word "estate" necessarily implies that this power was one which was exercisable only by a successor-trustee after petitioner's death. While the power, of course, would be subject to the usual fiduciary limitation of good faith and honest dealing, we are not convinced that the term "estate", in its context and relation to the other powers which petitioner possessed, was intended to have such a narrow or technical connotation. The Tax Court, however, did not specifically consider the question in its appraisal of petitioner's bundle of rights, nor purport to include the power as a factor in its decision, and we therefore shall not pursue the matter further.

in his hands too the power, by a withholding and accumulation, to give to the trust dedication the practical effect of a mere irrevocable testamentary disposition of the property and its income.

As in the Stockstrom case, we cannot say that the Tax Court's appraisal of the combination of petitioner's control of the trust property and of the power to dispose of its income, as being equivalent practically, in petitioner's family situation and in relation to the purpose which the property would serve without the dedication, to a retention of economic ownership of the property, is without a "rational basis." Cf. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248; Webre Steib Co. v. Commissioner of Internal Revenue, 65 S.Ct. 578, 583; Tyson v. Commissioner, 8 Cir., 146 F.2d 50, 51; Miller v. Commissioner, 6 Cir., 147 F.2d 189.

Other arguments have been made by petitioner, which are sufficiently answered by our opinion in the Stockstrom case and will not here be repeated. Nor shall we attempt to differentiate the decisions of the Tax Court in other cases, which are claimed to be in conflict with its decision here, for the reasons which we also have set out in the Stockstrom opinion.

The decision of the Tax Court is affirmed.