IN THE MATTER OF THE ESTATE OF ANTONIO PETRALIA.—
(DOMINICA DI MAGGIO, Appellee, *vs.* LEO PETRALIA,
Admr., Appellant.)

*Opinion filed January 21, 1965.*

SALVATORE E. ODDO, of Chicago, for appellant.

MAYO, LEIGH & HINCHCLIFF, of Chicago, (WILLIAM
H. LEIGH and PAUL E. PRICE, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the
court:

In 1948 Antonio Petralia opened a savings account in
the First National Bank of Chicago, naming himself as
"trustee" for the benefit of his daughter, Dominica Di-
Maggio, to whom the balance in the account at his death
was to be paid. After Petralia's death, Dominica Di Maggio,
plaintiff herein, instituted a citation proceeding against the

defendant administrator of the estate of Antonio Petralia in the probate court of Cook County in which she claimed title to the account. The probate court held that a valid trust had been created and that under the terms thereof the plaintiff was entitled to the balance of $17,189.15 in the account. The Appellate Court affirmed, and we granted leave to appeal.

This is the first occasion on which we have been called upon to consider the validity of savings bank or "Totten" trusts. The defendant urges the court to reverse the judgments below on two grounds: (1) that the execution of the signature card was insufficient to establish an intent on the part of Antonio Petralia to create a trust; and (2) "that the form of trust attempted to be executed by the savings accounts trusts is an attempt at a testamentary disposition and not operative, due to the failure to conform with the Statute of wills."

The record indicates that for a number of years prior to 1948 Antonio Petralia was the sole owner of a regular savings account which he had opened in his name at the First National Bank of Chicago. On November 8, 1948, he closed the account and transferred all the funds therein to the savings account trust which is the subject of this litigation. The new account was entitled "Tony Petralia, Trustee," and on the first side of the signature card appeared the signature "Tony Petralia" with the word "trustee" written beneath. On the reverse side of the card was the following language:

> "All deposits in this account are made for the benefit of Domenica Di Maggio
> To whom or to whose legal representative said deposits or any part thereof, together with the interest thereon, may be paid in the event of the death of the undersigned Trustee."

The signature "Tony Petralia" again appeared below the language on a line designated "trustee". Beneath the signature was written "Mrs. Domenica Di Maggio", "July 29, 1909" and "Daughter."

Introduced in evidence were facsimile ledger sheets of the First National Bank which showed that from the date the account was opened to the date of his death, Antonio Petralia alone made numerous deposits to and infrequent withdrawals from the account. The balance in the account steadily increased.

In support of his contention that the execution of the signature card was insufficient to show an intent to create a trust, the administrator emphasizes the fact that the printed agreement on the card provided that the bank "may", rather than "shall", pay the balance to the plaintiff at his death. The use of the word "may" is said to show a lack of intent that the plaintiff was definitely to receive the benefit of the account.

The reason for the inclusion of the word "may" in the agreement is not clear. Due to the similarity of the language on the signature card to the statutory provision for non-liability of banks for death taxes in certain situations (Ill. Rev. Stat. 1961, chap. 16½, par. 145), it may be that the wording was used to follow the statutory language for some reason. Whatever the reason for the use of the word "may", however, we think that the general tenor of the agreement indicates an intent to create a trust and that the settlor intended that the funds be paid to his daughter at his death. This conclusion is confirmed by the fact that the settlor changed his regular savings account to a savings account in trust form, an act which would have been unnecessary if he intended to maintain the account solely for his own benefit. We think it significant also that Antonio Petralia did not in fact withdraw the funds in the account and use them for his own benefit during his lifetime but instead followed a regular pattern of making deposits, thereby steadily increasing the size of the account, apparently for the benefit of his daughter. Although there was testimony by Antonio Petralia's nephew that Petralia had told him the account was opened so that his daughter could make de-

posits for him, the fact that Petralia alone made all deposits greatly discredits the persuasiveness of such evidence. We think there was ample evidence to support the trial court's finding that Antonio Petralia intended to create a trust.

This brings us to a consideration of the defendant's contention that the trust was invalid as an attempted testamentary disposition without compliance with the Statute of Wills. Since the trust agreement was not executed in accordance with the formalities required by the Statute of Wills, the determinative issue becomes whether a valid *inter vivos* trust was created. One of the requirements for the establishment of a valid *inter vivos* trust is that the beneficiary acquire a present interest during the lifetime of the settlor. (*Farkas* v. *Williams,* 5 Ill.2d 417; Restatement of the Law of Trusts, § 56). The defendant argues that since the settlor alone retained the power to withdraw interest and principal from the account during his lifetime, the trust was illusory and testamentary in that the beneficiary never obtained any present interest during the settlor's lifetime.

It is true that Antonio Petralia, as settlor and trustee, retained extensive control over the savings account trust which he established. However, in this respect it is not significantly different in substance from other revocable *inter vivos* trusts which have been held valid in this and other jurisdictions. (*Farkas* v. *Williams,* 5 Ill.2d 417; *Gurnett* v. *Mutual Life Ins. Co.* 356 Ill. 612; *Bear* v. *Millikin Trust Co.* 336 Ill. 366; *Kelly* v. *Parker,* 181 Ill. 49; Anno. 32 A.L.R. 2d 1270.) The nature of the beneficiary's present interest under such trusts is well stated in 1 Scott, The Law of Trusts, 353-354: "The declaration of trust immediately creates an equitable interest in the beneficiaries although the enjoyment of the interest is postponed until the death of the settlor, and although the interest may be divested by the exercise of the power of revocation." The fact that the

beneficiary's actual enjoyment of the trust is contingent on Antonio Petralia's death without first having revoked the trust by withdrawing the balance in the account does not negate the existence of a present interest in the plaintiff during her father's lifetime, even though that interest may have been highly destructible.

We conclude that the instrument executed by Antonio Petralia on November 8, 1948, was sufficient to create a valid and enforceable *inter vivos* savings account trust. In so holding we accept the position adopted by the American Law Institute in § 58 of the Restatement (Second) of Trusts: "Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust."

The judgment of the Appellate Court affirming the order of the probate court of Cook County is affirmed.

*Judgment affirmed.*