69 Ill. App.2d 352 (1966)
217 N.E.2d 444
In the Estate of Gussie Anderson, Deceased.
Alida Drake and Laura Therien, Petitioners-Appellees,
v.
Virginia DeBower and Hilda R. Madson, Individually and as Executrix, Respondents and Cross-Petitioner-Appellants,
v.
First Federal Savings and Loan Association of Chicago, Respondent to Cross-Petition-Appellee,
v.
Bell Savings and Loan Association, Respondent to Cross-Petition and Cross-Petitioner-Appellee.
Gen. No. 50,429.
Illinois Appellate Court  First District, First Division.
February 18, 1966.
*353 *354 Grosshandler and Compere, of Waukegan, for respondents and cross-petitioner-appellants.
Gregory A. Gelderman and Chris Karafotias, of Chicago, for petitioners-appellees.
Leo B. Blaber, Jr., of Chicago, for respondent to cross-petition-appellee, First Federal Savings and Loan Association of Chicago.
Cummings & Wyman, of Chicago (Kurt W. Teuthorn, Henry F. Vallely and Robert E. Ulbricht, of counsel), for respondent to cross-petition and cross-petitioner-appellee, Bell Savings and Loan Association.
MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.
The issue involved herein is the correctness of an order making disposition of balances in three savings accounts after the death of the depositor thereof.
The sequence of events leading up to the issuance of the order appealed from is as follows:
Gussie Anderson, the decedent, on or about July 24, 1959, opened savings account No. 135897 at the Bell Savings and Loan Association, executing an instrument entitled "Declaration of Trust  Revocable" in which Laura Therien and Virginia De Bower were designated as beneficiaries. The pertinent provisions of the agreement are as follows:

*355 DECLARATION OF TRUST  REVOCABLE
(One Trustee)
By this Declaration of Trust dated July 24, A.D. 1959 and known as Trust No. 28289, the undersigned hereby declares that the withdrawable capital account established with the Bell Savings and Loan Association, and issued in the name of the undersigned as trustee, including all additions hereafter made or accumulations resulting therefrom, is held in trust by the undersigned in accordance with the terms hereof for the following beneficiary (or beneficiaries, as tenants in common), who shall have an interest in the withdrawal value of said account in the proportion set opposite each beneficiary's name: ...
The terms and conditions under which the undersigned holds said capital account are as follows:
1. All earnings thereon shall be added to the withdrawable capital in said account and become and remain a part of this trust, subject to the terms hereof, unless the undersigned, as trustee, shall direct that the same be paid to the undersigned for his own personal account and use.
2. Upon compliance with the rules and by-laws of the Association, the undersigned, as trustee, shall have the right to vote, to sign and execute proxies with respect to the withdrawable capital comprising said account or the voting thereof, to make payments upon, withdraw, surrender and redeem and otherwise deal with respect to said withdrawable capital and the withdrawal value thereof as fully as though owned absolutely by the undersigned. However, upon any such withdrawal from said account by the undersigned, as trustee, the trust hereby declared shall be revoked as to the value of the *356 withdrawable capital so withdrawn and the undersigned shall retain the proceeds of such withdrawal for his own personal account and use.
3. The undersigned has the right at any time to change the beneficiary or beneficiaries or the proportionate interests or in any manner to amend this trust, but it is understood that no such change or amendment shall be effective as to the Association unless and until written notice thereof in such form as the Association shall prescribe is delivered to the Association at its office in Chicago, Illinois.
4. The death of any beneficiary before the death of the undersigned shall operate as a revocation of the interest of that beneficiary in this trust and the interest of such deceased beneficiary shall vest in the undersigned individually. The death of all the beneficiaries of this trust before the death of the undersigned shall operate as a complete revocation of this trust.
5. Upon the death of the undersigned the surviving beneficiaries shall become entitled to their proportionate interests in the withdrawal value of said account as provided by this Agreement or any amendment thereof as herein authorized.
On or about February 26, 1960, the decedent opened Account No. 283266 in the First Federal Savings and Loan Association of Chicago in her name, as Trustee, executing a document entitled "Individual Trust Account," in which Laura Therien, Hilda R. Madson and Alida E. Drake were designated as beneficiaries. The pertinent provisions of that agreement are as follows:
Discretionary Revocable Trust Agreement With Designated Successor Trustee
The funds in the account indicated on the reverse side of this instrument, together with earnings *357 thereon, and any future additions thereto are conveyed to the trustee as indicated for the benefit of the beneficiary as indicated. The conditions of said trust are: (1) The trustee is authorized to hold, manage, invest and re-invest said funds in his sole discretion; (2) The undersigned grantor reserves the right to revoke said trust in part or in full at any time and any partial or complete withdrawal by the original trustee shall be a revocation to the extent of such withdrawal; (3) In the event of the death of said trustee ... is appointed successor trustee, and in the event of his death ... is appointed successor trustee, and such successor trustees shall have the powers of the original trustee; (4) This trust is for the life of said beneficiary and six (6) months and if not revoked within six (6) months after the death of said beneficiary, funds in said account shall be the property of the estate of said beneficiary; (5) the association in which such funds are invested is authorized to pay the same or to act in any respect affecting said account before or after the termination of this trust upon the signature of the trustee and has no responsibility to follow the application of the funds.
On or about July 6, 1962 she opened a joint savings account No. 358869 in the First Federal Savings and Loan Association of Chicago in her name and that of Alida E. Drake. The pertinent provisions on the signature card are as follows:
Joint Savings Account, Proxy. One Signature for Withdrawal. Account No. A-358869 Anderson, Gussie and Drake, Alida E. 7/6/62 (Type all Names) (Last Name) (First Name) (Middle Name)
As joint tenants with right of survivorship and not as tenants in common the undersigned hereby apply for a membership and for a Joint Savings Account *358 in the First Federal Savings and Loan Association of Chicago
and for the issuance of evidences of membership in the joint names of the undersigned as joint tenants with right of survivorship and not as tenants in common.
She then executed a Will on August 8, 1963 naming her sister, Hilda R. Madson, executrix, and therein providing as follows:
Second. I give devise and bequeath to my niece, Virginia James De Bower, all my property real, personal and mixed of which I may die siezed [sic]. This shall also include the following savings accounts:
First National Bank Account No. 1647347[*] Bell Savings and Loan Account No. 135897 First Federal Savings and Loan Account No. 283266 First Federal Savings Account No. 358869
She died August 21, 1963 and the Will was admitted to probate, and left surviving her:
 Hilda R. Madson, sistern
 Laura Therien, sister
 Alida E. Drake, Niece (child of deceased sister)
 Virginia De Bower, niece (child of deceased
 sister)
 Russell E. Rasmussen, husband of deceased niece
 Russell Larsen, husband of deceased niece
The Bell Savings Account No. 135897 had remaining on deposit $11,716.26; the First Federal Savings Account *359 No. 283266 had a balance of $12,781.36; and in the First Federal joint savings Account No. 358869 there was a balance of $639.08.
Alida Drake and Laura Therien filed a petition for citation in the probate estate charging that the executrix had or should have had possession and control of the three accounts and prayed that citation issue against her and that the court determine all questions of title to the assets and find that they were owners of the same in whole or in part.
Hilda R. Madson, as executrix, and with Virginia De Bower individually, filed answer to the petition alleging that Bell Savings and First Federal had retained the funds and had refused to deliver any part of them to the executrix; that Virginia De Bower claimed all right and title to the funds by virtue of paragraph Second of Gussie Anderson's last Will; that as executrix it was Hilda Madson's duty to collect and, therefore, they requested an order denying and dismissing the petition and finding that decedent by her Will, affected a revocation of the "tentative trusts" and the joint account. Hilda R. Madson further cross petitioned for citation against the First Federal and Bell Savings and for an order to deliver the funds in the accounts to her as executrix.
Both Bell Savings and First Federal answering the citation, requested dismissal of Madson's cross petition. They denied that the trusts and the joint tenancy were revocable by will or that decedent did effect a revocation by her Will and prayed for an order directing them to pay the funds to the respective beneficiaries in the trust accounts and to the surviving joint tenant in the joint account.
Upon hearing the issues involved, the Probate Division of the Circuit Court entered the instant order finding the Bell Savings Account No. 135897, a revocable declaration of trust in which Therien and De Bower were the *360 beneficiaries, to be an express inter vivos trust and not a tentative trust; that the beneficiaries had a vested interest subject to being divested by revocation or amendment during the life of decedent, Gussie Anderson, in accordance with the terms of the declaration; that the Will did not amend or revoke the trust; that the executrix was not entitled to the balance therein. The finding regarding the First Federal Savings Account No. 283266 wherein Therien, Madson and Drake were the beneficiaries was the same and as to the First Federal joint savings account, the court found that Drake, the surviving joint tenant, was entitled thereto. The order then dismissed the executrix' cross petition and directed that the funds be paid to the respective beneficiaries and the surviving joint tenant.
Virginia De Bower, the sole legatee in the Will, and Hilda R. Madson, individually and as executrix of the estate, hereinafter referred to as respondents, appeal from said order.
[1] They contend that "the Will is either inconsistent with a trust intent or that it expressly revoked the trust savings accounts." They say "the Will in this case is clearly inconsistent with any intention on the part of the decedent to create a trust and rebuts any inference that might be drawn from the deposit agreement that a trust was truly intended by the decedent when she opened the account. The court could so find and dispose of the case on this basis." No further reason or logic is propounded by them to sustain or support this theory. Yet they do accept the rule expressed in the recent case of In Re Estate of Petralia, 32 Ill.2d 134, 204 NE2d 1 (1965), at p 138, where the court held that:
Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any *361 part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.
In the alternative, they say, the court could also consider the issue as one involving revocation of the savings account trusts. They assert that the two trust accounts were "Totten or tentative" trusts and argue that, according to comment to section 58 of the Restatement of Trusts (Second Edition) p 157, a tentative trust of a savings deposit can be revoked by the depositor by Will; that it is so revoked where by Will he makes a disposition of the deposit in favor of anyone other than the beneficiary.
The petitioners concede this but say these savings accounts are not "Totten or tentative" trusts but trusts inter vivos. The American Law Institute in the Appendix to the Restatement of Law, (second edition), in comment b to section 58 on Trusts p 123, contains the statement:
It has been widely held that where a deposit is made in a savings account, or with a building and loan association, in the name of the depositor as trustee for another person, and there is no further indication as to the depositor's intention, the depositor has full power to deal with the deposit as he likes but if he dies without having otherwise disposed of the deposit during his lifetime or by will, the named beneficiary is entitled to the deposit. It is sometimes said that the trust is a "tentative trust." The trust is sometimes called a "Totten Trust" because the rules governing it were laid down in In re Totten, 179 NY 112, 71 NE 748 (1904). [Emphasis added.]
*362 A review of In re Totten (wherein the Totten or tentative trust rule was established), discloses the following facts and circumstances. Decedent, there, during her lifetime opened several savings accounts in her name as trustee for Emil Lattan. The only indication that the accounts were anything other than individual accounts was the title under which the accounts were opened. There were no separate trust agreements nor was there any other evidence presented with respect to these accounts. Emil Lattan, the beneficiary, had no notice of their existence until after the death of the depositor. He brought suit for the funds claiming that the accounts were irrevocable trusts. The court held (p 125) that:
A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor. [Emphasis ours.]
In the instant case, Gussie Anderson, the depositor, executed declarations of trust containing specific provisions regulating the deposit and disposition of the funds in the accounts.
Farkas v. Williams, 5 Ill.2d 417, 125 NE2d 600 (1955) held that such declarations of trust created valid inter vivos trusts effective to give the beneficiary title to the property therein, after the death of the settlor; that the control retained by the settlor over the subject matter of the trusts did not render the trust instruments attempted *363 testamentary dispositions; and that otherwise they would be void as testamentary dispositions for want of compliance with the statute on wills. Further commenting upon such trusts the court (p 422) said:
Immediately after the execution of each of these instruments, he [the settlor] could not deal with the stock therein referred to the same as if he owned the property absolutely, but only in accordance with the terms of the instrument.
The basis for the "Totten Rule" was a savings account in the name of a depositor as trustee for another, nothing more. The court did distinguish it from a case where "[t]here was much more than a mere deposit in the name of one person in trust for another, for an independent instrument was executed, which not only declared the intention of the depositor, but directed when the account was to be paid to the beneficiary." In re Totten, 71 NE 752, 753.
[2] In the case before us, we have more than mere accounts in the name of the depositor as trustee. We have the specific trust declarations containing definite terms and provisions regarding the deposit and disposition of funds and the change, alteration, modification and termination of the trust. These trust accounts, therefore, cannot be considered "Totten or tentative" trusts but, as held in Farkas, they are express inter vivos trusts.
[3, 4] In considering whether they may be affected by the depositor's will, we note that the trust agreements did not specifically provide for revocation by Will. Where the language provides for right of revocation but is not specific as to how it is to be exercised, it becomes a matter of interpretation of the terms used whether the depositor manifested an intention to reserve the power to revoke by will as well as by an act inter vivos. Restatement of Trusts (Am Law Inst Second) sec 330, comment j. The intention at the time of *364 the creation of the trust is determinative and not any subsequent contrary indication. Restatement, sec 4, comment a.
In Merchants Nat. Bank of Aurora v. Weinold, 22 Ill. App.2d 219, 225, 160 NE2d 174 (1959) the court said: "In Restatement of Law of Trusts (Am Law Inst 1935) sec 330, comment j, it is said `If the settlor reserves a power to revoke the trust by a transaction inter vivos, as for example, by a notice to the trustee, he cannot revoke the trust by his will.'" The court then held that if in the trust agreement the settlor reserved an exercise of the power to alter, change or modify the trust, and there was an absence of words or provision to alter, change or modify by will, settlor's attempt to do so by will was ineffective.
[5] Neither the Bell Savings trust agreement nor the First Federal trust agreement specifically granted the right to revoke or alter by Will. If such right exists, it must be by implication. Specific methods of revocation in both agreements were by withdrawal of the balance on deposit. In the case of the Bell Savings agreement, a change of beneficiary or a change of proportionate interest of the beneficiary could be effected by a written notice to the Association. The situation would, therefore, fall within the above comment of The Restatement of Trusts sec 330, comment j, and the settlor could not revoke or alter by will. See Cohn v. Central Nat. Bank of Richmond, 191 Va 12, 60 SE2d 30.
[6] The First Federal agreement provides that it may be revoked at any time, and that any withdrawal by the original trustee shall be a revocation of the extent of such withdrawal. A reasonable and fair conclusion would, therefore, be that it refers only to inter vivos transactions. Upon her death, Gussie Anderson would have lost the ability to revoke since time, in the finite sense, ran out on her. We note further that Ill Rev Stats ch 32, sec 770b, Illinois Savings and Loan *365 Act 1963, sec 4-10-b provides for methods of revocation of trust accounts opened with state and federal associations in the absence of a contrary agreement between the trustee and the association. The express statutory method of revocation prescribed is the withdrawal of funds and the method of changing the beneficiary (which might conceivably be equated with a revocation since one could name oneself beneficiary) is by a written direction accepted by the association. Subsection 3 provides that the beneficiaries shall be the holder of the account upon the death of the trustee. By statute, therefore, revocation by will is not contemplated.
We further believe that were we to construe these trust agreements as conferring power upon the settlor to revoke by Will, their validity would be in doubt because the power would exceed the line of demarcation between inter vivos trusts and testamentary dispositions as established by the Farkas case.
[7] For these reasons we hold that the trial court committed no error in finding these trusts were not revocable by Will.
[8, 9] In attacking the trial court's ruling that the balance remaining in the First Federal joint savings account No. 358869 be paid to the surviving joint tenant, respondents argue that it was necessary for the court to go behind the form of the deposit agreement to ascertain the true intention of the decedent when she opened the account. They admit that a deposit in a joint savings account raises a presumption of donative intent. However, they say the presumption being rebuttable, if there is any evidence which tends to rebut donative intent, the burden then falls upon the survivor to show by clear and convincing evidence that a gift was, in fact, intended and completed. In the latest case involving a joint savings account with right of survivorship, Murgic v. Granite City Trust & Sav. Bank, 31 Ill.2d 587, 202 NE 2d 470 (1964) our Supreme Court reviewed the various *366 previous decisions and established the principles applying to such by stating (p 591):
We hold that an instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement.
It is not disputed that the joint account was opened in a manner authorized by statute (Ill Rev Stats c 32 § 770a; Illinois Savings & Loan Act, 1963 Edition, sec 4-10 and Ill Rev Stats 1963 c 76 §§ 2(b) and 2(c)). The only contrary inference produced by respondents, who are the ones claiming adversely to the instrument creating the joint account, is the expression in decedent's Will that she gives, devises and bequeathes to Virginia De Bower the "First Federal Savings and Loan Account No. 358869."
[10, 11] At the risk of being repetitious, we say it is the intent of the depositor at the time of creation of the account that is determinative. In Murgic the court considered a will subsequently executed by one of the joint tenants and held it was of no significant help when related back to the time of creation of the account in determining donative intent. And so in the instant case respondents failed to produce clear and convincing evidence that Gussie Anderson did not create a valid joint account with right of survivorship. Therefore, the joint tenancy having been properly established, its legal effect could not be changed by will. For as held in Eckardt v. Osborne, 338 Ill. 611, 615, 170 NE 774 (1930) "it is elementary that where property is held in joint tenancy the joint tenant first dying has no interest which can be devised." See also Klajbor v. Klajbor, 406 Ill. 513, *367 94 NE2d 502 (1950). The trial court properly directed payment of the remaining balance to Alida E. Drake, the survivor.
The order appealed from is affirmed.
Affirmed.
MURPHY, J., concurs.
BURMAN, J., dissenting:
I am unable to agree with the result reached by the majority of the court.
By depositing her money in the two savings accounts in trust, the deceased created revocable inter vivos trusts, of which she was the sole trustee. By the language of the declarations of trust, quoted in the majority opinion, she was empowered to revoke, alter, or amend the trust at any time and in any way she saw fit. The procedure by which she could effect such a revocation, however, was not fully spelled out in either case. It is clear that she could do so simply by withdrawing some or all of the funds in each account. A simple written direction from her communicated to the savings and loan associations would also have sufficed. Yet it is here contended that a provision to the same effect contained in her will, which was executed with all the requisite safeguards and formalities, subsequent to the opening of the accounts, is not effective to revoke the trusts. I see no valid basis for such a distinction.
Furthermore, it is my view that a fair reading of the declarations of trust signed by the deceased would lead a depositor to the conclusion that the funds in the account are hers to deal with as she sees fit. The deposit agreements give the beneficiaries nothing more than a mere expectancy. It is apparent that the deceased in the instant case was under the impression that this property, like her other property, could be disposed of by *368 will. There is no provision in the declarations of trust to the contrary.
The defendant principally relies upon Farkas v. Williams, 5 Ill.2d 417, 125 NE2d 600, for the proposition that the rights of the settlor-trustee of a revocable inter vivos trust to deal with the property in the trust are not absolute, but are limited in accordance with the terms of the declaration of trust, 5 Ill2d at 422. But in Farkas, there was no attempted revocation by the settlor-trustee, and no other act on his part which was challenged as beyond his powers under the terms of the trust. The question in that case was whether those powers which were reserved to the settlor-trustee, were so extensive as to render the trust invalid as an attempted testamentary disposition. The court held that they were not so extensive as to require that result. A further distinction between Farkas and the instant case is that Farkas involved shares of capital stock, while this case involves deposits in bank accounts and that Farkas died intestate.
The recent case of In re Estate of Petralia, 32 Ill.2d 134, 204 NE2d 1, raised the same question of law as in Farkas, but involved a savings account in the name of the deceased as trustee for a named beneficiary. Petralia differed from the instant case in that there was no formal declaration of trust, no will, and no question of revocation. As in Farkas, the validity of the trust was challenged by the intestate heirs. The court characterized the trust as a "tentative" or "Totten" trust, and held that the interest which passed to the named beneficiary at the time the account was opened, although contingent and highly destructible by act of the settlor-trustee, was sufficient to sustain the validity of the trust.
As to the joint savings account with right of survivorship, it is undisputed that the deceased had the right to withdraw the funds and close the account at any time, thereby depriving her joint tenant of any interest *369 in the property. In my opinion this right impliedly gives her the right to achieve the same effect by so providing in her will. In Murgic v. Granite City Trust & Sav. Bank, 31 Ill.2d 587, 202 NE2d 470, our Supreme Court held that one claiming adversely to the surviving joint tenant has the burden of establishing by clear and convincing evidence that a gift was not intended. In Murgic the depositor executed a will containing a general residuary bequest to heirs in Yugoslavia without mentioning the joint account. It is hard to imagine a manifestation of a depositor's intention clearer than the Last Will of the depositor in the instant case, which specifically identified the accounts and left them to someone other than the joint tenant.
The intent of the deceased should be the guiding star in determining who receives her property at her death. It is her property to give, and unless she created an irrevocable trust her intention as to its disposition should govern. In my opinion, the will of the deceased in this case effectively revoked the trusts, and the funds should pass in accordance with the testamentary provisions.
NOTES
[*] Note: The First National Bank Account, a joint savings account in the name of decedent and Hilda R. Madson, is not involved in these proceedings.