*In re* Estate of CHARLES R. WRIGHT, Deceased—(ARNOLD C. WRIGHT, Exr., Petitioner-Appellee, *v.* FARMERS STATE BANK OF FERRIS, Respondent-Appellee—(MARY LOWE, Respondent-Appellant.))

(No. 73-254;

Third District—February 28, 1974.

Samuel J. Naylor, Pat Corcoran, and Charles Bell, all of Carthage, for appellant.

Vilas C. Rice, of Carthage, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Hancock County finding that assets contained in a certain savings account established by a decedent were properly assets of such decedent's estate rather than those of a purported individual beneficiary named in the bank's records of the account.

The record before us discloses that on September 28, 1971, the decedent, Charles R. Wright, instructed the cashier of the Farmers State Bank of Ferris, Ferris, Illinois, an Illinois banking institution, to prepare a bonus savings account to be denominated "Charles Wright, Pay on Death to Mary Lowe." The decedent's instructions were followed by the bank, and the account was established and originally funded with a deposit of $2,000, which sum apparently came from another savings account (of decedent) held by the Farmers State Bank in the name of decedent alone. Colloquy between the decedent and the cashier brought out during the proceedings below indicates that decedent did not intend that appellant, Mary Lowe, have withdrawal rights during decedent's lifetime. No signature cards, or any instruments, were executed in connection with the account. Subsequent deposits thereto were made by decedent, who also made one $500 withdrawal during his lifetime. Such withdrawal, however, was followed 9 days later with an equivalent deposit by decedent. At the time of decedent's death on October 4, 1972, there was a balance in the account of some $6,000. As of November 21, 1972, the account balance, including accrued interest, stood at $6,182.36.

The decedent's last will and testament, which mentioned no savings accounts and made no disposition for the benefit of appellant, was duly admitted to probate, and appellee, Arnold C. Wright, was appointed executor of decedent's estate. The only beneficiaries of decedent's probate estate are his sons, who are to share equally in the assets thereof.

On December 7, 1972, appellant made formal demand on the Farmers State Bank of Ferris for delivery of the funds contained in the account in question. Such demand was rejected by the bank because of the competing claims to the account, and citation proceedings instituted by appellee followed in the circuit court, which ultimately entered the judgment and order in favor of appellee from which this appeal is taken.

Testimony during the citation proceeding established that appellant and decedent had met some 16 months prior to the latter's death, and that during that time a close relaionship was maintained between the two. Marriage between them was contemplated, but apparently was ultimately rejected because of decedent's ill health.

It should be noted at this juncture that we do not here deal with any rights of a surviving spouse to the decedent's estate (see *Montgomery v. Michaels*, 54 Ill.2d 532, 301 N.E.2d 465 (1973)), nor with any rights of creditors of decedent or his estate, which estate, excluding the account in· question, was solvent. Rather, we are here interested in only the rights of named beneficiaries of decedent's estate (his sons) vis-a-vis those of appellant.

In the analysis of matters of the character now before us, a court of appeal would not properly discharge its obligation if it avoids a construction which requires that the court make a determination on the basis of rational and reasonable principles, rather than simply recite that the legislature has not acted in the area and that, therefore, the court of appeal should presume some legislative wisdom or policy arising solely from such omission. This is notably true in the issues before us.

· We are all familiar with the forms used in issuance of United States Bonds containing a so-called P.O.D. or "Payable on Death" provision which appeared in substantially the form as we find in the account before us. In 1943, a few years after these bonds had been issued and had been recognized and acted upon, on the basis of the specific language in the bonds, section 2 of the Joint Rights and Obligations Act (Ill. Rev. Stat. 1971, ch. 76, § 2) was amended to provide that these United States Government obligations would become the property of the alternative named payee on the death of the purchaser. The Illinois act purported to create a right of survivorship in such bonds. We may be sure that nowhere could it be pointed out or successfully contended that the right of survivorship and the vesting of the interest in the surviving beneficiary was dependent upon the Illinois act. All interest in the bond clearly vested in the person named as the beneficiary following the death of the principal party then designated. The Illinois act obviously operated simply to confirm or codify a rule of law applicable to such bonds.

It is also pointed out that, in 1955, the Illinois legislature added language to the Illinois Savings and Loan Act (Ill. Rev. Stat. 1971, ch. 32, § 770(c)), vesting benefits in the survivor where a savings and loan account was in the form as we have in the bank account before us. It is true that even in construing such account, our colleagues seized upon the legislative provision as the sole basis for justifying payment to the beneficiary upon death of the original party. We do not believe that this was a sound approach to the problem although we, also typically, find comfort in legislative provisions which specifically authorize a disposition which we believe to be sound or desirable.

To contend, on the basis of the absence of a similar provision in the

Illinois Banking Act, that the legislature somehow intended that persons designated as beneficiaries in bank accounts, in the event of the death of the original party, were not to have the benefit of such clear arrangement, we believe, does not furnish a rational basis of distinction. Where the desire to have such payment made to a beneficiary designated in a document such as Federal bonds, or in savings and loan accounts, or in a bank account such as we have before us, is clear, we believe that the intervention of a banking institution or the Federal Government, as the agency which is to hold and make the payment, actually fulfills the requisite condition that the intent of the settlor be unquestioned. To say then that such intention could not be carried out simply because there is no legislative sanction, we believe, is not a reasonable or sound determination. Wherever possible, and where not clearly contrary to established policy, statutes or laws, courts of review should carry into effect the intent of the parties rather than frustrate such intent by erecting theoretical barriers not conceived by the party to prevent such intent from being carried out.

No one doubts what the intent was in the instant case, nor is there any basis for failing to carry out such intent, other than a technical interpretation of the applicability of the Illinois Wills Act by the court. We believe it is high time for the courts of review in this State to recognize and give effect to accounts of the character before us, rather than to lamely assert that a public policy invalidating such disposition is somehow divined or arises, obscurely, from the circumstance that there is no specific legislation in this area as to bank accounts. If there is a reluctance to deal with this problem specifically on the basis that legislation which has been enacted simply codified an applicable rule of law, there still exists applicable legal principles independently of legislative action, which furnish a rational basis upon which to give effect to the intent of the parties.

It is principally maintained by appellant that decedent, in opening and maintaining the account in question, established a so-called "Totten" or tentative trust, which device was recognized as valid in Illinois by our supreme court in the case of *In re Petralia,* 32 Ill.2d 134, 138, 204 N.E.2d 1 (1965), by the following language:

> "[W]e accept the position adopted by the American Law Institute in § 58 of the Restatement (Second) of Trusts: 'Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the

intended trust in enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.'"

See also *In re Estate of Anderson*, 69 Ill.App.2d 352, 217 N.E.2d 444 (1st Dist. 1966), and *In re Totten*, 179 N.Y. 112, 71 N.E. 748 (1904).

In support of the proposition that a recognized "Totten" or tentative trust was here created, appellant refers us to, *inter alia*, the following circumstances: at the time the account in question was opened, the decedent apparently withdrew $2000 from his regular savings account (held in his name alone) and immediately used such money to fund the new account. Further, decedent continued to make significant deposits to the account in question throughout the rest of his life, while making only one withdrawal of $500, which withdrawal was "made up" with a deposit in the amount of $500 only 9 days later. Decedent and appellant were affectionate friends; their plans for marriage being thwarted, however, by the condition of decedent's health.

Appellant points out that the primary object of all rules of construction in interpretation is to arrive at and give effect to the mutual intentions of the parties as expressed in the whole agreement and the circumstances surrounding the transaction. "In the interpretation of any particular clause of trust agreement, the court is required to examine the entire agreement and may also consider the relation of the parties, their connection with the subject-matter of the agreement, the circumstances under which it was made, and the purpose for which it was made." *Brinkerhoff v. Ridgely*, 232 Ill.App. 12, 17 (3rd Dist. 1924); see also *Merchants National Bank of Aurora v. Weinold*, 12 Ill.App.2d 209, 138 N.E.2d 840 (2nd Dist. 1956).

In addition, we are reminded by appellant of the admonitions contained in *Golstein v. Handley*, 390 Ill. 118, 125 (1945), that "[n]o particular form of words or language is necessary in a gift of property to create a trust," and in *Pap v. Pap*, 247 Iowa 371, 374, 73 N.W.2d 742, 747 (1955), where it is said that "'it is not necessary that the word "trust" or "trustee" be used in order to create a trust * * *'". Moreover, argues appellant, it is clear that wholly parol trusts in personal property are recognized in Illinois (*Maher v. Aldrich*, 205 Ill. 242 (1903)), and since a trust has been here established, there is no compelling reason for this court to thwart the settlor's intent.

Appellee, on the other hand, argues that "payable on death" accounts in banks are alien to the common law, and until rendered effective by affirmative legislative action, they must be held violative of public policy unless in compliance with the Statute of Wills (Ill. Rev. Stat. 1971, ch. 3, § 43). It is further maintained by appellee that the evidence adduced

below failed to establish that decedent created a "present interest" in appellant in the purported trust *res* during the lifetime of decedent, a recognized requisite of a valid *inter vivos* trust (see *Farkas v. Williams*, 5 Ill.2d 417, 125 N.E.2d 600 (1955)). In support of these conclusions, appellee relies heavily upon the case of *In re Estate of Gubala*, 81 Ill. App.2d 378, 225 N.E.2d 646 (1st Dist. 1967), where a "payable on death" account held in a savings and loan association was upheld, but only because of the existence of specific enabling legislation providing therefor (Ill. Rev. Stat., ch. 32, § 770(c)), which legislation is not applicable to accounts held in banks.

While the court in *Gubala* categorized "payable on death" accounts as pure testamentary dispositions, we do not think that is perforce true in all cases where the words "payable on death" or their equivalent appear in the title of an account. We believe, rather, that each case must be decided upon its own facts, and although it is true that the words "Pay upon Death" appear in the name of the account *sub judice*, it is also true that largely all of the indicia surrounding the creation of a "Totten" trust are equally in being. Thus, it was shown below that decedent and appellant had been close and affectionate friends; that, indeed, marriage had been contemplated, but rejected due to decedent's ill health. Decedent clearly established the account in question with an intent to benefit appellant, as he apparently transferred funds from an account held in his name alone in order to originally fund the new account, which named appellant a beneficiary thereof, and while it is true that he manifested an intent that appellant's possession and enjoyment of the account would not occur until his death, that is a feature of many *inter vivos* trusts given judicial sanction. (See *e.g. In re Estate of Anderson*, 69 Ill.App.2d 352, 217 N.E.2d 444 (1st Dist. 1966); *Allen v. Hendrick*, 104 Ore. 202, 206 P. 733 (1922).) Particularly, as noted by our supreme court in *Petralia*, 32 Ill.2d 134, 204 N.E.2d 1 (1965), at pages 137-138: "[t]he nature of the beneficiary's present interest under [a tentative trust) is well stated in 1 Scott, The Law of Trusts, 353-354: 'The declaration of trust immediately creates an equitable interest in the beneficiaries although the enjoyment of the interest is postponed until the death of the settlor, and although the interest may be divested by the exercise of the power of revocation.' The fact that the beneficiary's actual enjoyment of the trust is contingent on [the settlor's] death without first having revoked the trust by withdrawing the balance in the account does not negate the existence of a present interest in the [beneficiary] during [the settlor's] lifetime, even though that interest may have been highly destructible."

Under the circumstances, we do not believe it may properly be said,

as maintained by appellee, that appellant had no "present interest" in the account during the lifetime of decedent. On the contrary, she was a beneficiary named in the account and in our judgment thus held a present, although wholly defeasible, interest therein contemporaneous with decedent's superior rights. The latter's death, however, terminated his rights, and rendered appellant's, indefeasible.

That we find, in accordance with the foregoing, that a tentative trust has been here established would seem to end our inquiry. However, a further argument advanced by appellant in our view serves as a basis for an alternate holding which we deem to be valid whether or not decedent established a trust in creating the account in question. We accordingly deem it wise to consider appellant's alternate theory, which maintains that the decedent in this case entered into a perfectly valid contract with the bank naming her as a third-party beneficiary thereto. As such, she is entitled to whatever funds were contained in the account at decedent's death, pursuant to the explicit terms of the contract. In support of this proposition, we are referred, *inter alia*, to 4 *Corbin on Contracts*, sec. 783, at pages 89-90 (1951), where it is said as follows: "Rarely has the third party been regarded as the beneficiary of a contract between A [the depositor] and the bank. This is due either to insufficient analysis or to the uncertainty and conflict that until recently existed in third party beneficiary law. In all such cases, so long as there is no fraud on A's creditors, C [the named beneficiary] should get the money that A has not drawn out * * * as * * * beneficiary of the banking debtor's promise to the creditor [depositor]." See also Steinert, J., dissenting in *Decker v. Fowler*, 199 Wash. 549, 92 P.2d 254 (1939).

We find appellant's third-party beneficiary contract theory quite compelling and entirely consistent with sound principles of jurisprudence. (See *Dudley v. Uptown National Bank*, 25 Ill.App.2d 514, 527-29, 167 N.E.2d 257 (2d Dist. 1960), where the third-party beneficiary theory advanced herein was made, but was found by the court to be inapplicable under the facts before it.) It is absolutely clear that decedent named appellant as the death beneficiary of the account in question, and it is equally clear that he entered into a binding contractual arrangement with the bank in connection therewith. There being no rights of creditors or a surviving spouse here in question, we see no legally cogent reason for thwarting the decedent's clear dispositive intent concerning the sums held in the account at defendant's death.

In accordance with the foregoing, we find that decedent either established a valid "Totten" trust with respect to the account in question, or entered into a valid third-party beneficiary contract naming appellant as the beneficiary thereof. In either case, appellant is entitled to all sums

in the account at the time of decedent's death. The judgment of the Circuit Court of Hancock County is thus reversed, and the cause is remanded to that court with instructions to vacate the judgment appealed from herein and to enter judgment in favor of appellant and against appellee with respect to the ownership of the savings account in question.

Reversed and remanded with instructions.

DIXON and STOUDER, JJ., concur.