STEPHEN HILLYER *et al.*, Plaintiffs-Appellants, v. MARJORIE R. HILLYER, Defendant-Appellee.

First District (1st Division)   No. 85—2530

Opinion filed October 6, 1986.

Edward T. Graham, of Wheaton, for appellants.

Pasky & Wood, of Aurora, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order determining the rights to certain funds held in a savings-account trust. The trial court held that the surviving co-trustee of a "Co-Trustee Discretionary Revocable Trust" (defendant Marjorie Hillyer) was entitled to withdraw the funds held in the account, thereby extinguishing the trust. The plaintiffs, Stephen Hillyer, Patricia Hillyer, Arlene Hillyer and Carol Kulack, beneficiaries of the account, have appealed.

The savings and loan trust account in question was opened at Reserve Savings and Loan Association (Reserve) on October 16, 1981, approximately 3½ months prior to the death of Glenn Hillyer. Hillyer was the sole settlor and depositor of the $10,000 account. A signature card was executed by both Glenn and Marjorie Hillyer as "co-trustees" for this account.

Although the signature card had two sides, only the agreement printed on the front side of the document (front-side agreement) was signed by Hillyer and his wife. Among other things, the front-side agreement provided: (a) the decedent and his wife were "co-trustees with right of survivorship"; (b) the named beneficiaries were the four

children of the decedent by his prior marriage; (c) all funds deposited in the account were "conclusively intended to be a gift and delivery at that time of such funds to the trust estate"; and (d) one signature was required for withdrawal.

The agreement printed on the reverse side of the document (reverse-side agreement) was not signed. A trust number, age of beneficiaries at termination of trust, and grantor signatures were not filled in or signed; however, the reverse-side agreement was incorporated by reference into the front-side agreement.

The reverse-side agreement was entitled "Co-Trustee Discretionary Revocable Trust Agreement for Two or More Beneficiaries (One Signature)." It included provisions that: (a) deposits were to be held "for the benefit of the beneficiary or beneficiaries"; (b) the trustee might "hold, manage, pledge, invest and reinvest the funds"; (c) a "grantor" of the account might revoke the trust; (d) a "trustee" who was a "grantor" might revoke the trust; and (e) a successor trustee appointed by Reserve would possess the same powers as those possessed by the original trustees.

On February 3, 1982, Glenn Hillyer died. Four and one-half months later, on May 18, 1982, Marjorie Hillyer revoked the trust by withdrawing and retaining all funds in the account. The issue before us is whether the surviving trustee of a co-trustee discretionary revocable trust is entitled to revoke the trust and retain the funds in the account as her sole property.

Initially, both plaintiffs and defendant assert that the trust at issue is a "Totten" trust, approved by the Illinois Supreme Court in *In re Estate of Petralia* (1965), 32 Ill. 2d 134, 204 N.E.2d 1, *aff'g* (1964), 48 Ill. App. 2d 122, 198 N.E.2d 200. The supreme court in *Petralia* adopted the position of the American Law Institute in section 58 of the Restatement (Second) of Trusts (1959):

> " 'Where a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.' " (*In re Estate of Petralia* (1965), 32 Ill. 2d 134, 138, 204 N.E.2d 1.)

See also *In re Totten* (1904), 179 N.Y. 112, 125-26, 71 N.E. 748, 752.

Defendant contends that, under *Petralia*, there is a presumption

that a savings-account trust opened by one or more persons "as trustee" for one or more beneficiaries is revocable. Plaintiffs also rely on *Petralia*, but for the proposition that the trust at issue may not be revoked after the death of the depositor/settlor. The plaintiffs argue that the decedent was the sole settlor, and therefore, the beneficial interest vested in the four named beneficiaries at his death. They claim that, under *Petralia*, decedent's widow was bound as a surviving trustee to pay the funds over to them.

■ In the case before us, however, the savings account trust is not a "Totten" trust. *Totten* involved a sole settlor-trustee rather than co-grantors or co-trustees. (See *Helfrich's Estate v. Commissioner of Internal Revenue* (7th Cir. 1944), 143 F.2d 43, 46; *Bumbaugh v. Burns* (Tenn. App. 1982), 635 S.W.2d 518, 521.)

Here we also have more than merely accounts in the name of the depositor as trustee. We have previously stated that when there are specific trust declarations which contain definite terms and provisions regarding the deposit and disposition of funds and the manner in which the trust may be modified or terminated, these trust accounts are not "Totten" or tentative trusts but express *inter vivos* trusts. *In re Estate of Chandler* (1980), 90 Ill. App. 3d 674, 679-80, 413 N.E.2d 486; *In re Estate of Anderson* (1966), 69 Ill. App. 2d 352, 363, 217 N.E.2d 444, *appeal denied* (1966), 33 Ill. 2d 627.

■ The language of the agreement at issue demonstrates the intent to establish an immediate trust. The reverse-side agreement states that "[t]he funds in the account indicated on the reverse side of this instrument, together with the earnings thereon, *** are conveyed to the trustees as indicated for the benefit of the beneficiaries as indicated." The document then sets out with some specificity the conditions of the trust and the powers of the trustees. Thus the trust is not tentative, but rather a valid, revocable *inter vivos* trust and any rules governing Totten trusts do not apply. See *In re Estate of Capocy* (1981), 102 Ill. App. 3d 609, 612, 430 N.E.2d 1131.

■ Plaintiffs contend that the language of the instrument establishes an irrevocable gift. They rely on the language in the front-side agreement which states that the funds placed in the account or added to it by any party "shall <u>be conclusively intended to be a gift and delivery</u> at that time of such funds to the trust estate." Their position is that while the front-side agreement provided for withdrawal of funds by the surviving trustee, it did not authorize the surviving trustee to revoke the trust. This conclusion seems to be based on the view that because the reverse-side agreement was not signed, the provisions for revocation do not apply.

Although it is unfortunate that the reverse-side agreement was unsigned, we cannot adopt plaintiffs' view that this renders the document irrevocable. To do so would be to negate the apparent intent of the trust.

In construing a trust agreement, we must consider the entire agreement, not merely one isolated provision. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 514, 426 N.E.2d 1198.) Conflicting provisions must be reconciled (*First National Bank v. Baker* (1976), 35 Ill. App. 3d 676, 681, 342 N.E.2d 337), and the intent of the parties must be determined and given effect (*Halas v. Executor of Estate of Halas* (1983), 112 Ill. App. 3d 940, 945, 445 N.E.2d 1264, *aff'd* (1984), 104 Ill. 2d 83, 470 N.E.2d 960; *In re Estate of Peterson* (1982), 103 Ill. App. 3d 481, 486, 431 N.E.2d 748). The nature of the instrument chosen is often the best guide to the intent of the parties. *Ford v. Newman* (1979), 77 Ill. 2d 335, 338-39, 396 N.E.2d 539.

■ The instrument chosen by the Hillyers was designated a "Co-Trustee Discretionary Revocable Trust." By choosing this particular trust instrument, the Hillyers apparently intended to create a trust for Hillyer's children that either of the co-trustees could revoke in his lifetime. Under the express terms of the account, either of the co-trustees could withdraw some or all of the monies in the account unilaterally. The front-side agreement also states that Reserve is authorized to pay on the signature of a surviving trustee.

Testimony of a branch manager of Reserve bears out that the intended purpose of this type of savings-account trust is to allow either party to withdraw the funds from the account. We also find nothing in the testimony at trial that warrants a conclusion that the monies in this account were intended to be an irrevocable gift. Under these circumstances, it would be incongruous to construe the "gift" language in the front-side agreement to negate the apparent purpose of the instrument.

Accordingly, we agree with the trial court that where the trust instrument provides for unilateral withdrawal or payments on the signature of a surviving trustee, a surviving co-trustee of a discretionary revocable trust is entitled to withdraw the funds, thereby extinguishing the trust.

The order appealed from is affirmed.

Affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.