In the Matter of the Accounting of MARY M. M. EBBESEN et al., as Executors of JAMES G. HARBORD, Deceased.

Surrogate's Court, Westchester County, January 26, 1950.

*Hugh L. Thomson* for Bankers Trust Company, as executor of James G. Harbord, deceased, petitioner.

*Monroe Collenburg* and *Irving I. Goldsmith* for Mary M. M. Ebbesen, as executrix, petitioner, and others.

*Bleakley, Platt, Gilchrist & Walker* for Anne L. Harbord and others.

*Mitchell, Capron, Marsh, Angulo & Cooney* for Richard P. Ovenshine and others, respondents.

*Timothy A. McCarthy,* special guardian.

GRIFFITHS, S. The questions presented by the executors for determination in this accounting proceeding involve the source of payment of Federal estate taxes and penalty interest thereon.

The provision with respect to the payment of taxes follows the dispositive provisions of the will, immediately suceeds the article defining the powers of the executors and trustees, and reads as follows: "Twelfth: I direct my Executors to pay out of my residuary estate any and all inheritance, succession, estate, legacy or transfer taxes which may be levied or assessed in any jurisdiction against my estate, or the gifts, legacies, devises, bequests and trust hereinbefore set forth."

The above-quoted provisions indisputably contain a direction against the apportionment of estate taxes imposed against testamentary benefits. The executors as well as remaindermen of the residuary trust suggest, however, that the direction against apportionment does not extend to estate taxes imposed against nontestamentary benefits.

The testator died on August 20, 1947. His will is dated June 28, 1939. The property passing outside the will which has been included in the gross taxable estate consists of life insurance policies payable to a designated beneficiary, and the amounts payable to the wife of testator by a former employer of testator under a retirement plan pension. Also included were the principal amounts of two *inter vivos* trusts established by testator by trust indentures dated August 15, 1930, and February 9, 1939.

The court determines that the will contains a clear direction against apportionment extending to the estate tax imposed upon nontestamentary benefits, as well as to the tax imposed

against property passing under the will. The use of the phrase " against my estate " and its separation by the word " or " from the enumeration of all testamentary benefits conferred by the will connotes the distinction made by the testator between estate taxes on nontestamentary benefits, as distinguished from the taxes on the benefits provided for under the will. (*Matter of Aldrich,* 259 App. Div. 162; *Matter of Haliday,* 184 Misc. 668; *Matter of Reid,* 193 Misc. 154; *Matter of Kingsley,* 194 Misc. 590.)

Elsewhere in the will the phrase " my estate " was referable to the testamentary estate of decedent. In the clause relating to the payment of taxes the term " my estate " extends to nontestamentary benefits. The term " my estate " is followed by the word " or " and an enumeration of each of the classes of testamentary gifts made by the will. As employed therein the term " my estate " therefore would be surplusage unless it were referable to nontestamentary property.

The same result would be reached if the will were read in the light of the law applicable at the date when it was drawn and at the date of death. (*Matter of Duryea,* 277 N. Y. 310; *Matter of Mills,* 272 App. Div. 229.) Although it was not until 1940 that the question of the inclusion of principal of an *inter vivos* trust in a decedent's taxable estate was finally settled, it was also observed in *Matter of Mills* (*supra*) that the testator therein had died in 1937 before the question of the taxability with respect to *inter vivos* trusts had been settled. In the instant proceeding, however, not only did the testator die long after 1940, but it is clear from the trust indenture of February 9, 1939, executed approximately four months before the date of the will, that testator contemplated that the principal of such trust might be taxable. Such indenture contained a clause specifically providing that in the event any part of the principal of such trust were included in determining the amount of any estate tax, the trust should bear that portion of the tax as the amount of the corpus so taxed bore to the gross taxable estate, after due allowance for any gift tax paid.

It is therefore apparent that testator knew even before he executed his will that an estate tax might be imposed upon nontestamentary as well as testamentary benefits. It may be inferred, therefore, that in drafting his will the testator at least contemplated the possibility that a tax might be imposed against one or more nontestamentary benefits.

A further question arises by reason of the apparent conflict between the provisions of the will and the provisions of the

trust indenture of 1939 with respect to the payment of estate taxes. As above set forth, such trust indenture contained explicit provision for the apportionment of any estate tax imposed by reason of the establishment of such trust. The trust indenture of 1930 contained no provision whatsoever relating to the apportionment or nonapportionment of estate taxes. The court determines that the provisions of the will supersede the provisions of the trust indenture of 1939, with respect to any taxes imposed by reason of the establishment of such trust as well as to those taxes imposed by reason of any other nontestamentary disposition. In *Matter of Weiskotten* (167 Misc. 67) it was held that the conflicting provisions of the will and of a trust indenture were controlled by the instrument later executed.

The remaining question to be considered relates to the source of payment of penalty interest with respect to the Federal estate tax. No claim is made that the liability for penalty interest was occasioned by any lack of diligence on the part of the executors. It has been held that penalty interest is not a part of the tax. (*Penrose* v. *United States,* 18 F. Supp. 413; *Matter of Harjes,* 170 Misc. 431; *Matter of Chambers,* 54 N. Y. S. 2d 88; *Matter of Kent,* 191 Misc. 939.) Accordingly, the provisions of the will with respect to the apportionment of estate taxes do not extend to penalty interest, and the provisions of section 124 of the Decedent Estate Law are inapplicable. It follows that penalty interest need not therefore be paid from the same source from which the tax is payable. It appearing that the principal of the testamentary trust will consist of the corpus of the residuary estate, the court determines that penalty interest shall be apportioned between principal and income, pursuant to the rule enunciated in *Matter of Chambers (supra).* Accordingly, only income earned upon that portion of tax principal devoted to the payment of the estate tax at the average rate of return for the period commencing fifteen months from the death of testator is applicable to the payment of penalty interest, and any deficiency in the payment of penalty interest shall be satisfied from trust principal. (*Matter of Chambers, supra; Central Hanover Bank & Trust Co.* v. *Peabody,* 190 Misc. 66; *Matter of Reid,* 193 Misc. 154, *supra.*) Income earned during the period of fifteen months immediately following the death of decedent will thereby be exonerated from the payment of any part of the penalty interest.

Settle decree.