**Andrew Sproule LOVE, Jr., Executor of the Estate of Andrew Sproule Love, Deceased, Plaintiff-Appellant,**

v.

**ST. LOUIS UNION TRUST COMPANY, a corporation, Sole Trustee Under Indenture of Trust of Andrew Sproule Love, Dated December 30, 1941, et al., Defendants-Appellants.**

**No. 56270.**

Supreme Court of Missouri, En Banc.

April 9, 1973.

As Modified on Court's Own Motion and Rehearing Denied June 11, 1973.

Bryan, Cave, McPheeters & McRoberts, C. Perry Bascom, St. Louis, for appellant, Andrew Sproule Love, Jr., executor.

Andrew Sproule Love, Jr., St. Louis, for appellant Andrew Sproule Love, Jr., in His Own Right and as Beneficiary.

Harry W. Kroeger, St. Louis, for appellants.

HIGGINS, Commissioner.

Action by Andrew Sproule Love, Jr., Executor of the Estate of Andrew Sproule Love, deceased, to construe a trust created by, and the last will and testament of, Andrew Sproule Love; and to require St. Louis Union Trust Company, Trustee under Indenture of Trust of Andrew Sproule Love of December 30, 1941, to contribute from trust assets a pro rata share of federal estate or state inheritance taxes or succession duties. The Executor's federal estate tax return showed a gross estate of $5,450,498.70, a taxable estate of $5,197,176.78, and a net tax after credits for state death taxes and tax on prior transfers of $2,102,937.98. Included in the gross estate for purpose of federal estate tax was $290,376.96, being the value of the trust estate at the death of Andrew Sproule Love. The Executor seeks to recover for the probate estate $120,077.70 as the portion of federal estate tax attributable to the trust. The Trustee and two of its principal beneficiaries, Peter C. Robertson and John O. Robertson, half brothers of the remaining principal beneficiary, Andrew Sproule Love, Jr., claim to have been relieved from liability for any such tax by decedent's will, and cross claim for judgment exonerating them and the trust from liability for contribution to federal estate taxes and all other death taxes. The trial court found and adjudged that the share of death taxes to be borne by the trust was $116,145.26, determined by multiplying the net tax payable, $2,102,937.98, by a fraction, the numerator of which was the federal estate tax value of the trust, $290,376.96, and the denominator of which was the taxable estate, $5,197,176.78, plus the federal estate tax exemption, $60,000, i. e.:

$$\frac{\text{Trust's}}{\text{Share}} = \frac{\text{Federal Estate Tax Value of Trust}}{\text{Taxable Estate} + \$60,000} \text{ (Net Tax}$$
$$\text{of Taxes} \quad \text{exemption} \quad \text{Payable)}$$

Both sides have appealed:

Appellants contended the trust should be exonerated from all liability for contribution, and appeal from the judgment insofar as it requires any apportionment. They submit, however, "that if the federal estate tax is apportionable as between trust assets and probate assets, the apportionment should be made as it was made by the Circuit Court, i. e., on the basis that assets that cause taxes shall pay taxes in relation to the amount of taxes caused." See Hammond v. Wheeler, Mo., 347 S.W.2d 884.

Andrew Sproule Love, Jr., both as Executor and as will beneficiary, contended the formula for apportionment should be:

$$\frac{\text{Trust's Share}}{\text{of Taxes}} = \frac{\text{Federal Estate Value of Trust}}{\text{Taxable Estate} + \$60,000} \text{ (Net Tax}$$
$$\text{exemption—Estate Tax Value} \quad \text{Payable)}$$
$$\text{of Exonerated Assets}$$

The Executor-will beneficiary thus agrees with the trial court that there should be apportionment, but appeals from the decree "in that it does not apportion the tax attributable to assets exonerated by the Will at all, rather casting the entire tax burden of those assets on the probate estate."

On December 30, 1941, Andrew Sproule Love, Sr., executed an Indenture of Trust in which his father, Edward K. Love, and St. Louis Union Trust Company were named as Trustees. The dispositive provisions of the original Trust Indenture later became obsolete; it contained no provision concerning the payment of federal estate taxes; and it was, by its terms, irrevocable by Mr. Love until the death of his father or until ten years after January 1, 1942, whichever event should occur first. Mr. Love's father died on March 22, 1953.

Within a month after the original trust instrument was made, Mr. Love married Helen Smith Love. She had two sons, appellants Peter C. Robertson and John O. Robertson, by a prior marriage, and of the marriage of Mr. and Mrs. Love, Andrew Sproule Love, Jr., was born.

On April 14, 1959, after the Indenture of Trust had become revocable and amendable, Mr. Love executed an amendment by which he completely reconstructed his dis-

positive provisions and provided that the corpus of the trust estate be held for the equal benefit of his son, Andrew Sproule Love, Jr., and his two stepsons, Peter C. Robertson and John O. Robertson, during their respective lives with remainders over to their respective descendants. Further provisions governed the disposition of the trust estate in the event of the death of the son or of a stepson without leaving descendants surviving him.

Helen Smith Love died December 15, 1959.

Mr. Love died May 10, 1967, without having further amended the trust instrument and without having remarried. He left a will, executed November 2, 1965, which left his residence properties and their contents in the City of Ladue, Missouri, and on Hart's Neck at Tenants Harbor, Maine, to his son, but provided that certain fractional interests in property near the summer residence would go to his stepsons in one case or to his son and his stepsons in another case. Aside from the residence properties, the entire estate was devised to, or in trust for the benefit of, his son Andrew Sproule Love, Jr., with contingent remainders in the residuary trust estate, if the son should die without issue, in favor of the stepsons to the extent of ten per cent, and in favor of his collateral relatives as to the balance.

The tax clause in the trust amendment of April 14, 1959, follows:

"ARTICLE IX: Any federal estate or state inheritance taxes or succession duties which may be assessed by reason of the Grantor's death or predicated upon such death as the taxable event shall be apportioned by the Trustees and by the Executors of the Grantor in proportion to the property held in trust hereunder and all other property which may be included as a part of the estate of the Grantor for tax purposes, except such property as may be specifically exonerated from the payment of any such taxes by the terms of the last will and testament of the Grantor, and the Trustees hereunder are specifically directed to pay direct to the persons entitled thereto, or to the Executors of the Grantor the proportionate share of such taxes arising by reason of such apportionment. Said Trustees, however, shall not be charged with the payment of any Missouri inheritance tax which cannot be determined finally as of the date of the death of the Grantor."

The tax clause in the will of November 2, 1965, follows:

"ELEVENTH: I direct my Executor hereinafter named to pay out of the general assets of my estate all estate and inheritance taxes and succession duties assessed by the United States, or any state thereof, against my estate, including but not by way of limitation, any insurance policies, joint property, and tenancies by the entirety which may be included as a part of my estate for tax purposes or against any gift, devise or bequest, excepting however, the bequests to my son provided for by Item Fifth of this will; and no such taxes shall be charged against or deducted from any such gift, devise or bequest. The said bequests under Item Fifth of this will shall bear their proportionate share of all such taxes which shall be paid out of or deducted therefrom. My Executor shall not, however, be charged with the payment of any Missouri inheritance taxes which cannot be determined finally as of the day of my death. All such estate or state inheritance taxes or succession duties which may be assessed by reason of my death, or predicated upon such death as the taxable event, shall be apportioned by my Executor in proportion to the property devised by said Item Fifth of this will and my residuary estate. I hereby direct that my Executor shall have the same powers as are given my Trustees by Item Sixth of this will."

In arriving at the judgment previously described, the court made the following pertinent conclusions of law:

"20. The Trust, by its terms, could be altered, amended or revoked only by a writ-

ten instrument delivered to the Trustees during Mr. Love's lifetime. The Will, being effective as a matter of law only upon Mr. Love's death, could not in any way alter, amend or revoke the terms of the Trust. Mr. Love did not alter, amend or revoke the Trust in any way during his lifetime. Therefore, regardless of any provisions in the Will, the provisions of the Trust, and in particular, those relating to the death tax burden to be borne by the Trust, must be given effect.

"21. Article ELEVENTH of the Will refers to certain non-Probate assets which might pass to devisees and legatees free of the burden of death taxes, but neither the Trust nor any asset conceptually similar to the Trust is referred to in said Article ELEVENTH. The maxim of equity, *inclusio unius est expressio alterius* applies in interpreting the intent of Mr. Love reflected in Article ELEVENTH of his Will and such intent was that the Trust should bear its proportional share of all death taxes.

"22. The rule of equitable apportionment in the allocation of death taxes among probate and non-probate assets has been established by the courts of the State of Missouri as a means of determining the proper apportionment of death taxes in the case of decedents who die possessed of probate and non-probate assets which together generate and contribute to the burden of death taxes in a decedent's estate.

"23. The theory of the rule of equitable apportionment of death taxes as established by judicial decision in this State is that probate and non-probate assets of a decedent are to be considered two separate estates and, absent a clear indication of intent to the contrary, allocation of death taxes should be based on the relative size of each estate. Even disregarding Article IX of the Trust, and in view of the application of the maxim of equity, *inclusio unius est expressio alterius,* the rule of equitable apportionment requires that the Trust bear its proportional share of Federal Estate and Missouri inheritance taxes.

"24. Article IX of the Trust does not require that in determining the proportion of taxes to be borne by the Trust, the tax burden of assets exonerated from any taxes under the Will is to be borne proportionally between the Trust and the probate estate."

The principal question is whether Mr. Love's trust was exonerated by his will from liability for the portion of federal estate tax attributable to trust assets. If the trust was not so exonerated, a secondary question is whether apportionment should be made as made by the trial court, or whether it should be made as contended by the executor.

The trial court's resolution of these questions was based on undisputed facts, and its judgment "shall not be set aside unless clearly erroneous." Rule 73.01(d), V.A. M.R.

▮ As suggested by the Trustee and the Robertsons, the Federal Estate Tax Act directed payment by the executor of such taxes in the first instance without specifying who was to bear the burden of the tax, and Congress thus intended that state law should determine the ultimate thrust of the tax. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106; Carpenter v. Carpenter, 364 Mo. 782, 267 S.W.2d 632, 637. Missouri does not have a statute dealing with the burden of the tax; and imposition or apportionment of the burden depends upon judicial decision where the basic concern is the intent of the decedent determined from the relevant instruments, with equitable principles to be applied when such intent is not expressed or discernible. Commerce Trust Co. v. Starling, Mo., 393 S.W.2d 489, 494 [1–6]; Priedeman v. Jamison, 356 Mo. 627, 202 S.W.2d 900, 903. To these principles should be added that suggested by the Executor that a trustee is to be guided by the trust instrument in dealing with trust property. First National Bank of Kansas City v. Hyde, Mo., 363 S.W.2d 647, 652 [4].

In this case, Mr. Love's desire that the trust bear its share of death taxes is expressed in Article IX of the Trust Indenture. It has been set forth previously in full and it provided in pertinent part that "Any * * * succession duties which may be assessed by reason of the Grantor's death * * * shall be apportioned by the Trustees and by the Executors * * * in proportion to the property held in trust hereunder and all other property which may be included as a part of the estate of the Grantor for tax purposes, except such property as may be specifically exonerated from the payment of any such taxes by the terms of the last will * * * of the Grantor, and the Trustees * * * are specifically directed to pay direct to the persons entitled thereto, or to the Executors of the Grantor the proportionate share of such taxes arising by reason of such apportionment."

This direction is clear, complete and unambiguous; and, under it, the Trustee is required to pay that fraction of death taxes which equals the proportion that Trust assets bear to the taxable estate.

■ Where instructions contained in a trust instrument are as clear and unambiguous as these, the intent of the grantor at the time of creation of the trust, as so indicated, governs, First National Bank v. Hyde, supra, 363 S.W.2d 1. c. 653 [9]; and subsequent modifying instructions are effective only in the manner expressed in the trust instrument under an expressly reserved power to amend. Krause v. Jeannette Inv. Co., 333 Mo. 509, 62 S.W.2d 890, 893; IV Scott, Trusts, §§ 330, 330.8, 331 (3d Ed. 1967). And see Restatement Trusts 2d, § 330, particularly Comment j., that "If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner and under those circumstances. * * * If the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will."

■ Mr. Love's intention in this respect is expressed in Article VI of the Trust Indenture which provides in pertinent part that "it shall be subject to the express condition and reservation on the part of the Grantor to alter or amend the terms of this agreement, or to revoke this agreement in whole or in part, and to free any sums of money, securities or other property from the terms of this trust, at any time during the Grantor's lifetime, upon written notification to that effect duly executed by the Grantor and delivered to the Trustees."

This reservation of the power to alter, amend, or revoke the trust and the manner of accomplishment of such purpose is also clear, complete and unambiguous; and, under such provision, Mr. Love could alter, amend, or revoke his trust only by written instrument executed and delivered by him while living to his Trustee.[1]

Accordingly, Mr. Love's will, even though later in time, particularly paragraph Eleventh, could not serve as a modifying instrument for purposes of alteration, amendment, or revocation of his trust, and his directive with respect to the burden of succession duties stands. Restatement, Trusts, supra; and see also In re Estate of Anderson, 69 Ill.App.2d 352, 217 N.E. 2d 444; Merchant's National Bank of Aurora v. Weinold, 22 Ill.App.2d 219, 160 N.E.2d 174; Leahy v. Old Colony Trust Co., Mass., 93 N.E.2d 238.

---

1. There was one amendment of the Trust to add John and Peter Robertson as beneficiaries and to specify apportionment of death taxes. It was accomplished by delivery to the Trustees of a written instrument executed by the Grantor, all in the manner expressed in the Trust Indenture. Paragraph 4 of the Amendment reaffirmed the original power to amend or revoke, "it being expressly understood and agreed that the same shall hereafter be subject to amendment, alteration or revocation by the Grantor as provided in Article VI thereof."

■ On this principal question the Trustee and the Robertsons argue that the tax clause in Mr. Love's will, insofar as it would exonerate the trust from taxes contrary to the express terms of the trust, was, in fact, not an amendment of the trust but was simply a bequest to the trust of taxes otherwise chargeable to the trust. The answer to this argument is that there is no such bequest, express or implied, in Mr. Love's will; and his trust provision is not to be defeated by reading a nonexistent bequest into his will. The expressed desire of the Grantor that the trust contribute toward succession duties is as legitimate as any other and entitled to remain inviolate against unauthorized change.

■ The Trustee and the Robertsons also argue on the principal question that the requirement of written notice to the trustees during the life of the grantor was solely for the benefit of the Trustee and may be waived by the Trustee. See St. Louis Union Trust Co. v. Dudley, Mo.App., 162 S.W.2d 290. The difficulty with such argument in this case is that the Trustee never waived the requirement and, consequently, neither the argument nor the authority applies.

Other facets of the argument on the principal question advanced by the Trustee and the Robertsons are that Article IX of the Trust Amendment shows an intention that the trust be amendable by will, that it indicates an intention to leave open the question of the burden of death taxes on the trust until final determination by will, and that clause Eleventh of the will exonerates the trust from payment of all death taxes. The argument emphasizes the language of Article IX that estate taxes be apportioned "in proportion to the property held in trust hereunder and all other property which may be included as a part of the estate of the Grantor for tax purposes, except such property as may be specifically exonerated from the payment of any such taxes by the terms of the last

will * * * of the Grantor * * *," and restates the language of clause Eleventh.

This also would permit an amendment to Mr. Love's trust in a manner contrary to the express language with respect to amendments in Article VI of the trust. Accordingly, it may not be said that the court's rejection of such argument is clearly erroneous for the reasons given for the failure of prior similar arguments, Restatement, Trusts, supra; and denial of the claim of the Trustee and the Robertsons that the trust was exonerated by the will from liability for the portion of federal estate tax attributable to trust assets was not improper.

■ On the issue of apportionment or allocation of the tax burden, the Executor contends his formula is superior to that used by the court because it "scrupulously followed the directions of the trust while generally observing the formula of equitable apportionment." In advancing this contention, he recognizes that "while several Missouri cases have discussed apportionment of death taxes, no case has apparently approved an actual formula to be used in dividing the burden of death taxes between an inter vivos trust and probate assets." He recognizes also that "the allocation ordinarily used is basically the same as that approved by the Court below," Commerce Trust Co. v. Starling, supra, Carpenter v. Carpenter, supra.

To avoid the effect of these concessions and in urging use of his own formula, the Executor argues that subtraction of the estate tax value of exonerated assets is expressly contemplated by Article IX of the trust and "reaches the result all seemed to argue is desired, that assets which cause taxes should pay them." Hammond v. Wheeler, supra. He also argues that the court's formula throws the burden of taxes on exonerated assets on the residue which "did not give rise to them any more than did the Trust."

In support of the formula adopted by the trial court, the Trustee and the Robertsons contend that the result of an apportionment as suggested by the Executor would have been that the trust would be required to contribute an amount of tax which was increased by a factor included in the denominator based upon exonerated property which had no relationship to the trust and which would vary depending upon the testator's bounty in other directions.

Since there is no statute in Missouri directed to such apportionment, the court, of necessity, had to make an apportionment based on equitable principles, and the formula devised accords with those ordinarily used. The Executor's argument is not persuasive to the extent of showing how the court's choice of the usual formula for resolution of the tax burden in this case was erroneous, and, accordingly, it may not be said that the apportionment as made by the court is in error.

The Trustee and the Robertsons have a further contention that the court erred in receiving extrinsic evidence from the scrivener of the trust and will under Rule 73.01, V.A.M.R. It is not necessary to rule this contention because in this view of the case, such evidence has not been considered.

Judgment affirmed.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court en Banc.

DONNELLY, MORGAN, HOLMAN, and HENLEY, JJ., concur; FINCH, C. J., dissents in separate dissenting opinion filed; SEILER and BARDGETT, JJ., dissent and concur in separate dissenting opinion of FINCH, C. J.

FINCH, Chief Justice (dissenting).

I must respectfuly dissent.

This case was heard originally in Division One which adopted an opinion written by Commissioner Higgins. That opinion held that Article IX of the Trust Indenture specifically required the trustee to pay that fraction of death taxes which equalled the proportion that trust assets bore to the taxable estate, and that such provision could be altered or amended only by written notification "executed by the Grantor and delivered to the Trustees," pursuant to Article VI of the Indenture. In so holding, the opinion used this language: "This reservation of the power to alter, amend, or revoke the trust and the manner of accomplishment of such purpose is also clear, complete and unambiguous; and, under such provision, Mr. Love could alter, amend, or revoke his trust only by written instrument executed and delivered by him while living to his Trustee." Consequently, concluded the opinion, testator's will could not amend or modify the trust or change the tax burden specified in the trust.

After a motion for rehearing was filed, this case was ordered transferred to the Court en Banc for reargument. Counsel were directed to and did file supplemental briefs in which they responded to these three questions:

"What was the purpose of the clause which restricted the way in which the trust agreement could be changed? Was it to prevent destruction or substantial diminution of the trust unless done in a particular way, or was it to prevent any sort of change, even a benefit or addition to the trust?

"Is it consistent to say that a person is entitled to make a will in Missouri and yet not give effect to the provisions of a will which specifies how estate taxes are to be paid?

"What is the legal significance of the fact that the will was the latest document in terms of time if there is a conflict between the will and the trust agreement as to payment of estate taxes?"

I conclude, after studying the briefs and arguments, that the correct answer to the first question posed by the Court is that Article VI of the Trust Indenture was not intended to hinder or prevent a benefit or addition to the trust. Article VI made the trust irrevocable after ten years (or after grantor's death, if that occurred earlier), but within said ten-year period grantor reserved a power to alter, amend or revoke the agreement, or to free money, securities or property from the trust. Grantor could do these things *if* during his lifetime he delivered written notification thereof to the trustees. The thrust or emphasis of action by grantor was on acts taking away from the trust or revoking or altering its terms. I find nothing in such reservation to indicate that such power contemplated or included a limitation on grantor's part of a right to add to or confer benefits on the trust. Such a conclusion is consistent with the provisions of Article V of the Indenture, which gave grantor a right to turn over additional property to the trustees, thereby adding to the trust, without requiring any written amendment thereof.

My answer to the second question propounded to counsel is that it would not be consistent to say to a person that he is entitled to make a will but that effect will not be given to provisions therein which specify how estate taxes are to be paid. Even when statutes expressly provide where the burden of death taxes shall rest, decided cases recognize that a testator by will may shift the incidence of that burden. Old Folks Home v. St. Louis Union Trust Company, 313 S.W.2d 671 (Mo.1958); In re Wheeler's Estate, 65 Ill.App.2d 201, 213 N.E.2d 35 (1965).

Such a conclusion is supported by what occurred during oral argument of this case before the Court en Banc. Counsel for plaintiff was asked what the situation would have been if the Eleventh clause in the will in directing payment from general assets of all estate and inheritance taxes on the estate had included words such as "including the taxes which would be assessed against the property in the trust which I have created." Counsel respondent to this question by saying that he thought such a clause would be fully effective, and that if it had been present in this instance, it would have resulted in taxes on the trust property being paid by the executors from the residuary probate estate. In response to additional questions, counsel went on to concede that he thought a will could amend this trust and could confer a benefit on the trust, and this would be true even though there would not have been a separate written instrument of the character specified in Article VI of the Trust Indenture. Counsel concluded, however, that the language in the Eleventh clause of the will was too general and indefinite to amount to such a directive and therefore was insufficient to produce such a result in this case.

Thus, in oral argument, counsel for plaintiff did not adhere to or urge the rigid position enunciated in the divisional opinion whereby the *only* way to alter or amend the trust instrument, including a change in the burden of taxes, would have been by a written instrument which grantor executed and delivered to the trustees in his lifetime. Indeed, counsel for plaintiff expressly conceded that the real question before the Court in this case is one of proper interpretation of the language in the Eleventh clause of the will. Thus, the issue presented for decision is not whether grantor had executed a separate written instrument changing the burden of taxes which he delivered to the trustees, but rather whether the language in the Eleventh clause of the will sufficiently disclosed an intention on the part of testator that the executor should pay out of the residuary estate such inheritance and estate taxes as were imposed in connection with property in the trust estate.

This latter question, recognized by counsel for plaintiff as the critical issue in the case, is not addressed or answered in the divisional opinion. Such opinion, in deciding the case, relies on the proposition that

the trust could be altered only in the manner specified in Article VI, that this was not done, and hence the inheritance and estate taxes must be paid pursuant to the terms of the trust instrument rather than under the Eleventh clause of the will.

Unfortunately, the majority has seen fit to adopt with only slight modification the opinion which was written in Division One, even though it takes no cognizance of the subsequent briefs and oral argument before the Court en Banc, including the recognition by counsel that the real issue is what is a proper interpretation of the language in the will. In view of the foregoing, I do not believe that the principal opinion adequately or properly disposes of the issues now before this Court.

It necessarily follows that my answer to the third question propounded to counsel would be that in deciding this case significance must be attached to the fact that the will was executed after the trust and that its clause with reference to payment of estate and inheritance taxes should be given effect. This conclusion is supported by two New York cases cited by defendants in their supplemental brief. In each of these New York cases there was a trust instrument which contained a clause directing apportionment of death taxes and a subsequently executed will which directed payment of all such taxes out of the residuary of the probate estate. In the case of In re Harbord's Will, 197 Misc. 760, 95 N.Y.S.2d 407, 410 (Sup.Ct.1950), the court said:

"A further question arises by reason of the apparent conflict between the provisions of the will and the provisions of the trust indenture of 1939 with respect to the payment of estate taxes. As above set forth, such trust indenture contained explicit provision for the apportionment of any estate tax imposed by reason of the establishment of such trust. The trust indenture of 1930 contained no provision whatsoever relating to the apportionment or nonapportionment of estate taxes. The Court determines that the provisions of the will supersede the provisions of the trust indenture of 1939, with respect to any taxes imposed by reason of the establishment of such trust as well as to those taxes imposed by reason of any other nontestamentary disposition. In Matter of Weiskotten's Estate, 167 Misc. 67, 3 N.Y.S.2d 810, it was held that the conflicting provisions of the will and of a trust indenture were controlled by the instrument later executed."

Affirming in a memorandum opinion the foregoing decision, the Appellate Division said (281 App.Div. 850, 119 N.Y.S.2d 229):

"The residuary legatees appeal from the decree settling the account insofar as said decree directs that estate taxes with respect to both testamentary and nontestamentary property be paid out of residuary and insofar as said decree adjudges that the provisions of the will with respect to estate taxes supersede the provisions of an inter vivos trust. Decree, insofar as appealed from, unanimously affirmed, with costs to all parties filing briefs, payable out of the estate."

In the later case of In re Osborn's Trust, 8 Misc.2d 859, 166 N.Y.S.2d 446, 452 (Sup. Ct.1957), the court said:

"Were one to assume that Article First of the trust agreement was clear and unambiguous thereby expressing a valid method of apportionment but in conflict with the provisions of Mrs. McKay's will, the latter instrument, being later in time, would control. (Matter of Harbord's Will, 197 Misc. 760, 95 N.Y.S.2d 407, affirmed 281 App.Div. 850, 119 N.Y.S.2d 229)."

The divisional opinion dismisses, without discussion, the fact that the will was a document later in time, saying this fact does not countermand the provisions of the trust instrument as to how a change is to be made in it. It does not analyze the language of the will to ascertain whether it disclosed a later intention that taxes imposed in connection with the trust estate

should be paid out of the residuary estate. The case of In re Weiskotten's Estate, 167 Misc. 67, 3 N.Y.S.2d 810 (Surr.Ct.1938), is persuasive as to what should be done. That case involved a trust, a subsequent will, and a subsequent modification of the trust, all made within four months time. The will contained a provision for payment of taxes which was in conflict with the tax clause in the original trust. However, the subsequent modification of the trust contained a clause where the grantor expressly ratified all the provisions of the original trust. Hence, the court gave effect to the latest instrument and did not apply the contradictory tax clause in the will. The court stated that if chronology was to be given weight, the controlling document would be the subsequent modification of the trust, being the latest declaration of the deceased. It should be noted that the court in In re Harbord's Will, supra, so construed Weiskotten. Applying the doctrine of these New York cases to our case, the controlling document in this case would be the will.

When we proceed, then, to an interpretation of Article Eleventh of the will, it indicates, in my judgment, a clear intention of testator that *all* death taxes against his taxable estate were to be paid from the residuary portion of his estate. That clause states in part, as follows:

"ELEVENTH: I direct my Executor hereinafter named to pay out of the general assets of my estate all estate and inheritance taxes and succession duties assessed by the United States, or any state thereof, against my estate, including, but not by way of limitation, any insurance policies, joint property, and tenancies by the entirety which may be included as a part of my estate for tax purposes or against any gift, devise or bequest, excepting however, the bequests to my son provided for by Item Fifth of this will; and no such taxes shall be charged against or deducted from any such gift, devise or bequest. The said

bequests under Item Fifth of this will shall bear their proportionate share of all such taxes which shall be paid out of or deducted therefrom. * * *"

It is to be noted that in the above clause testator specifically provides that *all* estate and inheritance taxes and succession duties assessed against his estate shall be paid from general estate assets except for those pertaining to Item Fifth in his will. No other exclusion is stated. In my judgment, under the pertinent authorities, the "estate" as mentioned in said clause means the taxable estate, and, without question, this trust was a part of the taxable estate of the testator. As previously noted, the will was written some time after the trust was executed and it is controlling. Under such circumstances, I would reverse the judgment of the Circuit Court and would direct that the taxes based on the trust property should be borne by the general assets of the estate.